JOHN KAESER ET AL. *v.* CONSERVATION COMMISSION
OF THE TOWN OF EASTON
(7383)

SPALLONE, DALY and BERDON, Js.

Submitted on briefs September 21—decision released December 5, 1989

*Donald A. Hendrie, Jr.* filed a brief for the appellants (plaintiffs).

*Ronald D. Williams* filed a brief for the appellee (defendant).

SPALLONE, J. The plaintiffs[1] appeal from the judgment of the trial court dismissing their appeal from the decision of the conservation commission of the town of Easton acting as the local inland wetlands agency. The plaintiffs claim that the trial court erred in failing to articulate its reasons for affirming the commission's decision to deny their application and in failing to find that the commission had acted arbitrarily by disregarding substantial expert evidence. We find no error.

In September, 1986, the plaintiffs applied to the defendant commission for permission to construct a new single-family dwelling and septic system on property they owned in Easton. The Inland Wetlands and Watercourses Act requires a permit for the construc-

---

[1] The plaintiffs are John Kaeser and the Kaeser Construction Company.

tion because the property is located within 200 feet of the Mill River, a designated wetlands. General Statutes §§ 22a-38 (13), 22a-42a (c). Upon due notice and after public hearings, the commission denied the plaintiffs' application.

The plaintiffs appealed to the Superior Court, claiming that the commission had failed to state upon the record the reasons for its decision as required by General Statutes § 22a-42a (d). The trial court reviewed the record and dismissed the appeal. Although it did not explicitly state the reasons or the evidence found, the court held that its review revealed sufficient evidence in the record to support the commission's decision. The plaintiffs appeal to this court from that dismissal.

Appellate review of an agency's decision is of limited scope. The reviewing court does not make a broad, de novo review of the record. *Huck* v. *Inland Wetlands & Watercourses Agency*, 203 Conn. 525, 541, 525 A.2d 940 (1987). It does not redetermine factual issues or weigh the credibility of witnesses, as those matters are within the exclusive province of the agency. Id., 540–42. The court is limited to a review of the evidence and reasoning the agency has placed on the record. Agency decisions must be sustained if the record reveals substantial evidence in support of any reason given. Id., 539–40.

In this case, the commission denied the plaintiffs' application on the basis of its determination that "the proposed activity will create conditions which may significantly and adversely affect the health, welfare and safety of the Community and the Mill River environment." The plaintiffs claim that this is merely a conclusory statement and not a reason for denying a permit. Even if that were so, the reviewing court may " 'search the record for reasons to support the agency's decision.' " Id., 528; *Norwich* v. *Norwich Fire Fighters,*

173 Conn. 210, 214, 377 A.2d 290 (1977). The court's memorandum of decision declares that it reviewed the record and found substantial evidence to support the commission's decision. The plaintiffs argue that this statement is itself inadequate. According to the plaintiffs, the failure of the reviewing court to set forth its findings indicates that either no search was actually conducted or no reasons were actually found. We reject the implication that a lack of articulated findings necessarily means that the court "rubber stamped" the commission's decision. A reviewing court is required to search the record for reasons; it is not required to articulate them. *Norwich* v. *Norwich Fire Fighters*, supra.

Our own review of the record indicates several reasons for the denial of the permit. A report from Donald Ballou, a professional engineer retained by the commission, suggests changes to the proposed construction, but the record is silent as to whether the plaintiff accepted these changes or amended his application.[2] Les Warren, a soil erosion and sediment control officer and conservation enforcement officer, submitted a report recommending the denial of the plaintiffs' application because the necessary leveling of the site with fill would have a detrimental effect on the Mill River floodplain.[3] He stated that encroachment on

---

[2] Donald Ballou's report indicated that the interior angle of the riprap and gambion wall was inadequate as proposed at less than forty-five degrees. An angle of sixty degrees is necessary to provide a more efficient hydraulic transition of floodwater and to increase the deflection of floating debris. No riprap size was specified at all and would need to be of a size sufficient to resist a water current of ten to twelve feet per second. The proposed deck must be cantilevered to avoid prohibited construction in the "floodway" and to eliminate ground supports that would be vulnerable to flood drainage.

[3] Les Warren's report noted that the plaintiffs' plan calls for depositing approximately 830 cubic yards of fill in a flood zone area adjacent to the Mill River. This would adversely affect the floodplain because "[f]or every yard of earth, rock or building placed in a Flood Plain area, a cubic yard of water will have to find someplace else to go in time of natural flooding."

rivers and streams in this flood zone exacerbates the property damage and injuries after natural flooding.

The plaintiffs next claim that if the commission accepted Warren's reasons for denying the permit, the court erred in finding those reasons to be supported by substantial evidence. The plaintiffs rely on the substantial evidence rule set out in *Feinson* v. *Conservation Commission,* 180 Conn. 421, 429 A.2d 910 (1980), in which the court held that in matters of technical complexity, such as pollution control, a lay commission without expertise in the area may not substitute its own judgment for contrary expert testimony. To do so without making public the basis of its decision and without offering the applicant an opportunity for rebuttal is to act arbitrarily and without fundamental fairness. Id., 428–29. In *Feinson,* the plaintiff's engineer was the only witness, and was questioned on the construction plan by only one commissioner. No community neighbors or representatives of public agencies attended or submitted material. The only contrary evidence offered was the opinion of a lay commission member. The plaintiff's permit application was denied although the commission evinced general satisfaction with the plan. The plaintiff was therefore denied any warning that his evidence would be entirely discredited and was denied an opportunity for rebuttal. Id., 428.

The plaintiffs here point out that the only expert testimony before the commission was presented by Ballou and another professional engineer, Leonard Jackson. Those qualified experts offered testimony about the environmental safety of the plaintiffs' planned construction and recommended approval. Because Warren's qualifications as an expert in any relevant specialty were not on record, the plaintiffs claim that his report does not constitute substantial evidence under *Feinson.* They claim that if the commission

accepted Warren's reasons, it acted arbitrarily in basing its decision on lay, rather than expert, testimony.

We do not agree with the plaintiffs' narrow reading of *Feinson* that, in technically complex matters, expert testimony is the only acceptable substantial evidence. This position would have reduced the agency hearings to a nose count of experts; plaintiffs: 2, agency: 0. It would have made irrelevant all other testimony from Warren and from numerous neighbors. In *Feinson,* the court was concerned with fundamental fairness. Id., 429. An agency decision must be based on reliable evidence made public and the applicant must have an opportunity to respond to agency concerns. Id., 428–29.

Unlike the commission in *Feinson,* this commission placed all relevant facts on the record and shared its concerns and objections with the plaintiffs. The commission held four public hearings on the plaintiffs' application. The named plaintiff attended and spoke at all four hearings; the plaintiffs' engineer attended and spoke at two. Commission members questioned the named plaintiff and the plaintiffs' engineer closely and at length on all aspects of the plan, concentrating on the possible effects of flooding on the landfill and septic system and on the possible consequences for the floodplain, floodway and Mill River.[4] The plaintiffs'

[4] The discussion on the record reveals that the plaintiffs' lot is vulnerable to the frequent flooding of the Mill River. The town of Easton has experienced several 200 year floods and a 300 year flood. The nearby hydraulic company opens its dams and releases extra water from the Easton Reservoir yearly into the Mill River. Overflow water is also released at floods, creating a water level downstream in excess of a 100 year flood.

The commissioners asked the named plaintiff and the plaintiffs' engineer about possible erosion of the septic system and the possible effect on the system from the eventual widening of the adjacent street. The planned septic system, it was noted, lies close to a constriction in the Mill River that might force water up over the roadway and into the system in time of flood.

The amount of required fill was of particular concern. Fill would be required over nearly the entire site, 200 feet from the edge of the river. A commissioner inquired if the fill would accelerate the leaching of effluents

plans and drawings were submitted to the commission's independent engineer. Other public agencies were invited to contribute assessments. The commission twice offered to postpone its decision until the submission of a report from the building department but the plaintiffs declined to wait and asked to have the hearings concluded. In light of the public concern over construction in the area, the commission solicited and received testimony from the owners of several neighboring homes, all of whom spoke about frequent flooding and voiced concerns about encroachments on the river. Unlike the agency in *Feinson,* this commission did not "[place] its data base beyond the plaintiff's scrutiny." Id., 428.

The plaintiffs also had a clear opportunity for rebuttal. After the reports from Warren and Ballou were received at the hearing on February 3, 1986, the commission moved to deny the plaintiffs' application. This hearing was recessed, a notice of recess was published, and the hearing was reconvened on February 13. The plaintiffs were present at both hearings and were invited at both to offer additional evidence, which they did not do. The plaintiffs cannot claim that they were not "afforded a fair opportunity to hear the commission's fears and to attempt to allay them." Id.

If the position that nonexperts may offer reliable and substantial evidence requires more support, we find it in *Huck* v. *Inland Wetlands & Watercourses Agency,* supra. The plaintiff in *Huck* applied for a permit to construct a home within a regulated area abutting Frye Lake in Greenwich. The plaintiff offered testimony from four experts in four different fields in support of

through to the river. The plaintiffs' engineer admitted in response that the ground below the fill would have to be of very good quality and offered to perform quality tests if necessary. The engineer's final report makes no reference to soil quality or testing.

her application, while the agency offered no expert testimony in rebuttal. Id., 538. The trial court sustained the plaintiff's appeal from the denial of the permit, finding that the record contained no reasons supported by substantial evidence. Id., 536–38. The agency appealed and our Supreme Court affirmed the agency's decision, faulting the trial court for substituting its own judgment and discretion. Id., 538.

The Supreme Court reviewed the record and found the agency had provided a number of reasons for denying the permit.[5] Id., 539–40 n.11. It carefully explained the substantial evidence rule and found the record contained such substantial evidence in support of the agency's reasons. Id., 541–42. Although only the plaintiff offered expert testimony, "an administrative agency is not required to believe any witness, even an expert . . . ." Id., 542. The court noted that, as in the present case, the record showed "active and probing participation by agency members in questioning these experts . . . ." Id., 544. The questions in *Huck* covered, as here, the septic system, the nature of the lot, the soils and the proposed fill. Id., 547. The commission members in the present case viewed the site, a factor the Supreme Court considered important. "Knowledge obtained through personal observations of the locus may properly be considered by the agency in arriving at reasons given for its denial." Id.

---

[5] The agency in *Huck* v. *Inland Wetlands & Watercourses Agency,* 203 Conn. 525, 525 A.2d 940 (1987), listed ten "findings." Four are statements of fact, such as a description of the site from survey data and the measured distances of the deck and septic system from the lake edge. One finding was that "[c]ommon sense would suggest that the proposed development would result in the degradation of water quality in Frye Lake." Id., 540 n.11.

The plaintiffs in the present case attempt to distinguish their facts from those in *Huck* on the basis that the agency in *Huck* explicitly cited its ten reasons on the record. While a numbered list of reasons would have been helpful, our duty, nonetheless, is to search the record. We think it a spurious distinction that the agency's report in this case was not as tidy as the *Huck* report.

Finally, the Supreme Court discussed the legislative intent in enacting the Inland Wetlands and Watercourses Act. The act gives broad discretion to agencies to preserve, protect and maintain the environment and ecology of the state's natural resources. Id., 551; see also *Klug* v. *Inland Wetlands Commission,* 19 Conn. App. 713, 717–18, 563 A.2d 755 (1989). "The discharge of the statutory responsibilities by local wetlands commissions may require commission members to reject 'an otherwise acceptable application' because of its impact on the environment. *Obeda* v. *Board of Selectmen,* [180 Conn. 521, 524, 429 A.2d 956 (1980)]." *Huck* v. *Inland Wetlands & Watercourses Agency,* supra, 552.

We find, in our review of the record, that the commission gave its reasons for denying the plaintiffs' application for a permit and find that these reasons were supported by substantial evidence. Nothing in the record suggests that the agency's decision was reached arbitrarily or was fundamentally unfair. The trial court, in reviewing the record, acted properly and in accordance with applicable law.

There is no error.

In this opinion, DALY J., concurred.

BERDON, J., concurring. I concur only in the result because the majority holds that the commission, in deciding technically sophisticated and complex matters, can rely upon nonexpert evidence to satisfy the substantial evidence rule.[1]

---

[1] The "substantial evidence rule is similar to the 'sufficiency of the evidence' standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain an agency finding if it affords 'a substantial basis of fact from which the fact in issue can be reasonably inferred . . . . [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury.' " *Lawrence* v. *Kozlowski,* 171 Conn. 705, 713, 372 A.2d 110 (1976), cert. denied, 431 U.S. 969, 97 S. Ct. 2930, 53 L. Ed. 2d 1066 (1977); *Huck* v. *Inland Wetlands & Watercourses Agency,* 203 Conn. 525, 541, 525 A.2d 940 (1987).

Section 5 of the Easton Inland Wetlands and Watercourses Regulations[2] requires the commission to take into consideration, and make findings with respect to, the environmental impact of the proposed action, including the "nature of any materials to be . . . deposited and the effect on flood control water supply and quality . . . ." Id., § 5.1.4. As it pertains to the present case, the commission's determination involved decisions on technically sophisticated and complex matters. See *Feinson* v. *Conservation Commission,* 180 Conn. 421, 426–27, 429 A.2d 910 (1980).

*Feinson* makes clear that a lay commission acts without substantial evidence when it relies on its own knowledge and experience concerning technically complex issues. Id., 427–29. It follows that if the lay commission cannot rely upon its own knowledge and experience in such cases, neither can it rely upon nonexpert evidence from others. *Connecticut Natural Gas Corporation* v. *PUCA,* 183 Conn. 128, 142, 439 A.2d 282 (1981); see *State* v. *McClary,* 207 Conn. 233, 243, 541 A.2d 96 (1988); *Jaffe* v. *State Department of Health,* 135 Conn. 339, 349, 64 A.2d 330 (1949). "[T]he commission may not reject an expert's testimony on a 'technically sophisticated and complex' issue that 'goes beyond "the ordinary knowledge and experience" of the trier of fact,' unless there is expert testimony available to the commission that will support its decision." T. Tondro, Connecticut Land Use Regulation (1983 Supp.), p. 101.

The majority's reliance on *Huck* v. *Inland Wetlands & Watercourses Agency,* 203 Conn. 525, 545, 525 A.2d 940 (1987), is misplaced. The court in *Huck* went to great lengths to describe the expert evidence supporting the agency's denial of the application, which

[2] The defendant is the duly designated municipal commission entrusted with the enforcement of the Inland Wetlands and Watercourses Act, General Statutes §§ 22a-36 et seq.

included the report of two agency experts that showed a "potential of pollution." Id., 549. The director of the town's environmental health office, although favoring the application, conceded the proposed activity could cause pollution of the lake because of the siltation problem. Id., 545. The court held that this expert evidence, taken with the deficiencies in the testimony presented by the plaintiff's expert, "furnish[es] a fair basis for the agency's stated view on its denial." Id., 545.

Recently, this court, relying on *Feinson* and *Huck,* held that although an administrative agency need not "believe any of the witnesses, including expert witnesses . . . it must not disregard the only expert evidence available on the issue when the commission members lack their own expertise or knowledge." (Citation omitted.) *Tanner* v. *Conservation Commission,* 15 Conn. App. 336, 341, 544 A.2d 258 (1988). Any other rule would allow the agency to permit, as well as to prohibit, activities affecting inland wetlands and watercourses without substantial evidence of a competent nature. This could defeat the beneficient purposes of the Inland Wetlands and Watercourses Act, which is to protect this "irreplaceable but fragile natural resource with which the citizens of this state have been endowed." General Statutes § 22a-36.

Nevertheless, nonexpert knowledge and testimony are relevant and may aid in determining the underlying facts in order to evaluate the expert's opinion. See C. Tait, Connecticut Evidence § 7.16.8 (2d Ed.). For example, in *Huck,* the general grade of the slope of the subject property to the lake became a relevant factor. The commissioner's nonexpert knowledge was used to evaluate the expert's opinion. He disclosed at the hearing that the grade was at least forty-five [degrees] and that " 'merely walking on that slope created a disturbance and caused things to roll into the lake.' " *Huck* v. *Inland Wetlands & Watercourses Agency,* supra, 545

n.16. Determinations of the nontechnical facts and opinion within the knowledge of a lay person, however, must be distinguished from determinations of technically complex facts and opinions, which can come only from an expert.

Unfortunately, the majority gets bogged down on what constitutes expert evidence. Such evidence comes from not only environmental scientists, engineers and the like, but also from those who gained their expertise from practical experience. *Bryan* v. *Branford,* 50 Conn. 246, 248 (1882).

In the present case, the decision of the commission was supported by the expert testimony of Les Warren, the soil erosion and sediment control officer of the commission. He recommended that the application be denied because the proposal would adversely affect the floodplain as a result of the depositing of 830 cubic yards of fill in the area adjacent to the Mill River.[3]

The plaintiffs argue that the soil erosion and sediment control officer's opinion should be discounted because the record does not show that he has any expertise in this area. The simple answer is that the plaintiffs, though given a full opportunity to challenge both Warren's qualifications as well as his opinion, chose not to do so. Moreover, there is a "presumption that public officials acting officially properly performed their

[3] The majority points out the failure of the plaintiffs to indicate on the record that they would accept the technical changes in the proposed construction suggested by Donald Ballou, the professional engineer retained by the commission, who found that the proposed construction would not be detrimental to the environment. Surely, the majority does not mean to suggest that the failure of the plaintiffs to indicate their acceptance of these changes on the record at the hearing would constitute grounds to deny the application. That would not be fair or practical as the commission has authority to grant the application upon "such terms, conditions, limitations or modifications of the regulated activity, designed to carry out the policy of sections 22a-36 to 22a-45, inclusive." General Statutes § 22a-42a (d).

duties." *Aczas* v. *Stuart Heights, Inc.,* 154 Conn. 54, 58–59, 221 A.2d 589 (1966). This encompasses the presumption that the public official is qualified in the field wherein his or her official duties lie until the contrary is shown. *State* v. *Main,* 69 Conn. 123, 140, 37 A. 80 (1897).

I concur in the result that the commission's reasons for denying the plaintiffs' application were supported by substantial evidence and in the finding of no error.