[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an administrative appeal wherein the plaintiff appeals from a decision of the defendant Conservation Commission which denied, without prejudice, his application for a permit to construct an access road and storm drainage system in connection with his plans to build a mini-warehouse storage facility. The property in question is located in a regulated wetlands area.
The named plaintiff, Terry Dilozir, has an agreement with the Nuclear Technologies Corporation, the owner of the property in question, to purchase it. Mr. Dilozir has applied for the necessary permits to develop a mini-warehouse storage facility. In view of the foregoing the Court finds the plaintiffs are aggrieved by the decision of the Conservation Commission.
The plaintiffs claim that said decision was unlawful in that it substituted its own lay opinion for that of the experts; that the record does not support the conclusions reached by the Commission; and that the Commission's unstated purpose is to block any development of the property.
Judicial review is, of course, limited to a determination of whether or not the Commission abused its discretion or exceeded its authority, Conn. Gen. Stat. Sec.4-183. Whether the Court would have arrived at the same decision if it had been the fact-finder is not a consideration. The standard of review to be used in this appeal is the so-called "sufficiency of the evidence" test, or stated another way, if this had originally been a trial to a jury, would a refusal to direct a verdict for the plaintiff be error. Huck v. Inland Wetlands Watercourse Agency,203 Conn. 525, 541 (1987). Applying this standard, the Court finds that the proceedings in this case were fundamentally fair and the plaintiff is not entitled to relief from the decision. Huck, supra. at page 542.
An agency designated with the authority to preserve and protect the state's fragile and irreplaceable inland wetlands is vested with a broad discretion over activities which may impact those valuable resources. Aaron v. Conservation Commission, 183 Conn. 5.32 (1981). Huck v. Inland Wetlands and Watercourse Agency, supra. at page 549; Kaeser v. Conservation Commission, 20 Conn. App. 309 (1989); Conn. Gen. Stat. Sec. 22a-36.
As the Connecticut Appellate Court stated in Kaeser, supra, a hearing before a conservation commission is not a "nose count of experts" and the commission may, indeed, rely I on testimony or information from non-experts and upon its CT Page 5013 own knowledge as well. Manor Development Corporation v. Conservation Commission, 180 Conn. 692 (1980); Huck v. IWWA, supra, at page 547; Kaeser v. Conservation Commission, supra, at page 316.
In this case the Commission based its decision on eight reasons. That decision must be sustained if the record discloses sufficient evidence to support any one of the reasons given. Huck, supra, at page 540.
AS TO REASON NUMBER 1:
 "Given the proposed drainage outlets close proximity to the wetland itself and the soil type within the immediate area, there would exist a lack of proper percolation time for inorganic materials to filter out before reaching wetland soil, which will overload the natural filtering capacity of the wetland."
The agency retained an engineering firm — Pare Engineering Corporation — to review the plaintiff's proposal. That firm initially raised some concern about the possibility of erosion downgradient from the developed site, but was satisfied that subsequent modifications in the plaintiff's plan addressed that concern. However, the calculations do indicate an increase in the runoff flow of some substance after the modifications. The runoff would flow into a beaver pond which is separated from Raymond Swamp by a railroad bed. The agency expressed concern that any contaminants would not filter out of the water before getting into Raymond Swamp. The agency was not persuaded that the integrity of Raymond Swamp could be maintained. This was a matter of some discussion between the members of the Commission, the applicants, and the engineers. Clearly, the plaintiffs made a good faith effort to comply with the suggestions of the defendant's engineers. The fact that the agency hired an engineering firm to evaluate the proposal is an indication that the agency was concerned with protecting the very important resource it had in its stewardship. It was not required to accept the conclusions of any experts. Kaeser v. Conservation Commission, supra. The record supports a conclusion that there would be a significant increase in the runoff flow. It does not support a conclusion that the agency could not find that Raymond Swamp could not possibly be contaminated from it.
AS TO REASON NUMBER 2:
"Storm water discharge created by the large CT Page 5014 impervious surfaced area will add increased warming water temperatures that will impact a wetland that is dependent upon cold water recharge in order to sustain salmon and trout habitats."
This was a concern raised by the Commission on January 22, 1990, and it really was not comprehensively addressed by the plaintiff. The project will add approximately two acres of impervious service. The record indicates that Raymond Swamp supports wildlife and is a breeding ground for certain fish. The agency's concern as to these matters was reasonable and it was entitled to a satisfactory response to that concern.
AS TO REASON NUMBER 3:
 "Due to the extreme permeability of the sand and gravel soil, any hazardous or toxic contaminants can quickly enter into the town's only aquifer zone."
This concern was a general one which the agency expressed. The possible pollution to the aquifer was of basic importance to the Commission. The proposal would include approximately 350 self-storage units, and while the applicants, again in good faith, proposed steps to limit the potential for contaminants to get into the soil, the agency, equally in good faith, found the proposed safeguards were not satisfactory to assure against such an eventuality. It (the agency) proposed design modifications to contain any such spills, but the plaintiff deemed them financially impractical. There was evidence as to the nature of the soil, and as the plaintiff states, they have excellent draining qualities so contaminants could be absorbed relatively quickly. The Court cannot conclude that this reason is not supported in the record.
AS TO REASON NUMBER 4:
 "The increased rising of water levels as proposed in the plan, will impact upon the marshes flood retention capability which will increase sediment and erosion. The Marsh, a wetland of special concern to the State of CT and the largest flood control area in Hebron, provides proper water quality and outlet flow for downstream water courses. Any sediment and erosion will degrade that quality and disrupt water discharge."
The plaintiff distinguishes sedimentation and erosion CT Page 5015 concerns between the beaver pond and Raymond Swamp, and claims that only the beaver pond would be impacted by such conditions. Further that any sedimentation could be removed from the beaver pond before it contaminated the swamp. Both areas are within the jurisdiction of the Commission. This concern (that contamination of the beaver pond could likely impact on the swamp) is found throughout the record. The conclusion of the Commission is not one which it could not have made, and the Court finds it is be a valid reason, based on a review of the record.
AS TO THE REASON NUMBER 5:
 "The inaccuracy of the drainage calculations as to the impervious surface and the discrepancy of the discharge CDFS from pages one (1) to fourteen (14)."
There was a discrepancy in the calculation of drainage flow by the plaintiff's engineer. The first computation indicated an increase in runoff flow from 11.9 CFS to 35 CFS. That was revised from 11.9 CFS to 16.5 CFS, and later the CFS is stated as 19.
The concerns of the agency as to the credibility of the witnesses or the reliability of their testimony is reasonably supported in the record. The amount of runoff increase is a major concern for the agency to consider. If it can, based on the record, question the probative value of the evidence it receives, that is a proper reason to reject it.
AS TO REASON NUMBER 6:
"The lack of detail for the weir."
This is admittedly somewhat confusing as there is no weir included within the proposed plans. The Court is disinclined to accept defendant's claim the "weir" referred to was a drainage outlet which was to have been "riprapped." Nor is it clear that the Commission was referring to a berm around the channel outlet. In view of the decision in this appeal finding other reasons adequately supported in the record, the lack of clarity for reason Number 6 has no affect in this decision.
AS TO REASON NUMBER 7:
 "Enforcement: that the written and verbal warnings, postings, prohibitions and lease provisions heretofore referenced by the applicant provide no CT Page 5016 guarantee that environmentally unsafe storage and handling practices will be detected or prevented."
The plaintiff's claim that their proposal eliminates or at least minimizes the risk of contamination from the proposed storage facility, and they claim the Commission requires an impossible degree of assurance.
The Court, on reviewing the record, concludes that the Commission acted in good faith on this issue. One of its primary concerns was the possibility of toxic spillage. It was not satisfied that the plaintiff's proposal to have restrictions listed in the rental contracts, to post warning signs, a locked gate entry, along with other proposed safeguards were sufficient protection. The question is whether the Commission had to accept the plaintiff's proposal as satisfactory or, under the applicable authority given to it, the Commission could have turned it down. Under the facts of this case as contained in the transcripts and case record, the concerns expressed appear reasonable. The Court does not find that, given the mandate and purpose of Inland Wetland Agency, it had no discretion to deny the application for this stated reason. There was considerable attention and discussion as to this issue and the Court finds it was reasonably and fairly considered.
AS TO REASON NUMBER 8:
 "The Commission feels reasonable and prudent alternatives do exist: The record indicates that the Commission suggested at least two alternatives, a reconfiguration of the drainage system, and a modification to better contain or safeguard against possible spills. (The plaintiffs did not propose any alternative uses for the site beyond the proposed personal storage units).
The Court cannot conclude that the alternatives suggested by the Commission are not reasonable and prudent although the plaintiffs would disagree, it appears to this reviewing Court that it was within the Commission's discretionary authority to propose them, and therefore not an abuse of its discretion to do so.
Accordingly, after reviewing the briefs submitted by counsel, as well as oral argument, reviewing the file and record (exhibits a through TT), and the authorities relied on by the parties, the Court finds that the defendant acted within the scope of its authority and discretion. CT Page 5017
The appeal is, therefore, dismissed.
HON. LAWRENCE KLACZAK SUPERIOR COURT JUDGE