[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal pursuant to General Statutes22a-43(a) and 4-183 from the denial of Foster Farms Partnership's application for an inland wetlands permit to allow development of a proposed subdivision.
The following facts are pertinent to this appeal. The plaintiffs in this appeal are Robert Lord, the owner of the property, and Foster Farms Partnership, the developer and the applicant. The defendant, Marlborough Conservation Commission (hereinafter "commission"), is the designated inland wetlands agency for the Town of Marlborough and as such has promulgated regulations under the authority of General Statutes 22a-42 necessary to protect the wetlands and watercourses within the territorial limits of Marlborough to further purposes and policies enunciated in General Statutes 22a-36. CT Page 2158
On April 23, 1990, Foster Farms Partnership filed with the defendant commission an application for an inland wetlands permit to allow development of a fourteen-lot subdivision known as Blackledge Hills, situated on 39.5 acres on Jones Hollow Road in Marlborough, Connecticut. Foster Farms Partnership's application, No. 90-14, was dated April 23, 1990. (ROR #12). The April 23, 1990 application was the third application that the applicant had submitted to the defendant to obtain an inland wetlands permit. Prior formal applications that were for essentially the same fourteen-lot subdivision proposal, were submitted to the commission on or about October 16, 1989, (ROR #43, No. 89-45), and January 9, 1990, (ROR #47, No. 90-3). Application No. 89-45 was denied as incomplete, among other reasons, on December 19, 1989. (ROR #46). Application No. 90-3 was withdrawn the day of the scheduled public hearing on March 6, 1990. (ROR #50).
Application No. 90-14 was reviewed by the commission on at least three other occasions at pre-application reviews which took place at regularly scheduled meetings of the commission on April 24, 1989, (ROR #39), June 20, 1989, (ROR #41), and August 21, 1989, (ROR #42). The project was also the subject of three special meetings of the commission for the purpose of conducting site walks. These site walks were conducted on May 13, 1989, (ROR #40), December 9, 1989, (ROR #45), and May 23, 1990, (ROR #22).
On June 5, 1990, a public hearing was held to discuss, among other matters, the application that is the subject of this appeal. (ROR #25). At this hearing Foster Farms Partnership offered testimony of a consulting engineer, R.P. Dimmock and his employee, Gorman (ROR #25, P. 40); an ecologist, Robert Kortmann, (ROR #25, P. 43); and a soil scientist, Richard Snarksi, (ROR #25, P. 20).
Additionally, the commission had before it two reports, from the district manager of the Hartford County Soil and Water Conservation District, Denise Conkling. One report, dated August 7, 1989, (ROR #2), was received on or about June 20, 1989, (ROR #41). The second report, dated March 2, 1990, (ROR #8), was received on or about March 6, 1990, (ROR #8). Both reports are part of the record on the present application, No. 90-14. (ROR #14 and 25, p. 1). The commission also received reports and reviews from Peter Gillespie, Wetland Enforcement Officer and Planning Coordinator for the Town of Marlborough, dated December 19, 1989, (ROR #4), March 5, 1990, (ROR #10), May 1, 1990, (ROR #4), and May 29, 1990, (ROR #23).
On July 9, 1990 the application was denied. (ROR #31). CT Page 2159 The plaintiffs received notice of the denial by a letter dated July 10, 1990, which was sent by certified mail. (ROR #32). The plaintiffs, claiming aggrievement, appealed defendant's denial of the application pursuant to General Statutes 22a-43(a) and 4-183 by filing the present action. The commission is named as a defendant in the citation. The chairman of the commission, the town clerk, the Commissioner of Environmental Protection and the Attorney General were served with a true and attested copy of the original citation and summons, complaint, bond, and exhibits on July 27, 1990. (See Sheriff's Return, dated July 27, 1990). The present appeal was filed with the court on August 1, 1990. Pursuant to General Statutes 22a-43(a) and 4-183 this appeal is timely.
At the hearing on November 26, 1991 the court found that the plaintiffs are aggrieved.
The Connecticut Appellate Court in Kaeser v. Conservation Commission, 20 Conn. App. 309, 567 A.2d 383
(1989), with respect to the scope of review of an agency's decision, stated:
 Appellate review of an agency's decision is of limited scope. The reviewing court does not make a broad, de novo review of the record. Huck v. Inland Wetlands Watercourses Agency, 203 Conn. 525, 541, 525 A.2d 940 (1987). It does not redetermine factual issues or weigh the credibility of witnesses, as those matters are within the exclusive province of the agency. Id., 540-42. The court is limited to a review of the evidence and reasoning the agency has placed on the record. Agency decisions must be sustained if the record reveals substantial evidence in support of any reason given. Id., 539-40.
Kaeser, supra, 311. The commission's decision must be sustained if an examination of the record disclosed evidence that supports any one of the reasons given. Huck v. Inland Wetlands Watercourses Agency, 203 Conn. 525, 539,525 A.2d 940 (1987).
In granting or denying an inland wetlands application, the appropriate inland wetlands commission shall consider the factors set forth in General Statutes 22a-41. (See General Statutes 22a-42a(d)).
General Statutes 22a-41 provides:
a. In carrying out the purposes and policies of CT Page 2160 sections 22a-36 to 22a-45, inclusive, including matters relating to regulating, licensing and enforcing of the provisions thereof, the commissioner shall take into consideration all relevant facts and circumstances, including but not limited to:
 (1) The environmental impact of the proposed action;
(2) The alternatives to the proposed action;
 (3) The relationship between short-term uses of the environment and the maintenance and enhancement of long-term productivity;
 (4) Irreversible and irretrievable commitments of resources which would be involved in the proposed activity;
 (5) The character and degree of injury to, or interference with, safety, health or the reasonable use of property which is caused or threatened; and
 (6) The suitability or unsuitability of such activity to the area for which it is proposed.
 (b) In the case of an application which received a public hearing, a permit shall not be issued unless the commissioner finds that a feasible and prudent alternative does not exist. In making his finding the commissioner shall consider the facts and circumstances set forth in subsection (a). The finding and reasons therefore shall be stated on the record.
General Statutes 22a-41. Sections 9.1 and 9.2 of the Marlborough Inland Wetlands Regulations, (ROR #1), contain substantially the same requirements as General Statutes22a-41 except that the regulations set forth in detail what will be considered under each heading.
The plaintiffs were notified by certified mail of the commission's decision. (ROR #32). This letter states that the reasons for the denial and the vote of the commission are available in the minutes of the July 9, 1990 meeting. (ROR #32). The minutes of the Marlborough Conservation Commission's special meeting of July 9, 1990 contain in relevant part: CT Page 2161
 The vote showed Mr. Bray and Mr. Hautman in favor. Mr. Kleinschmidt, Mr. Aust and Mr. Zakszewski opposed for the following reasons: Mr. Aust believes the road/wetland crossing could be done in a better way. Mr. Keinschmidt submitted his 11 page summary with his reasons. Mr. Zakszewski is concerned with the detention basin — there was no answer given as far as the amount of water required to overflow the one foot berm; no clear answer about not all the road runoff being directed into the detention basin.
(ROR #31, P. 115).
The plaintiffs argue that the issues before the commission were "technically complex" and, therefore, pursuant to the reasoning of the court in Feinson v. Conservation Commission, 180 Conn. 421, 425-26, 429 A.2d 910
(1980), and the concurring opinion in Kaeser, supra, only expert testimony could serve as substantial evidence. Plaintiffs reason that the only expert testimony before the commission was that offered by the plaintiffs in support of the application and that, therefore, pursuant to the reasoning of the court in Feinson, supra, and the concurring opinion in Kaeser, supra, the commission should have approved the application. Plaintiffs also argue that Peter Gillespie is not an expert and his testimony and reports are not properly considered as substantial evidence. Plaintiffs argue that Denise Conkling's reports should be disregarded because her credentials are unknown and plaintiffs did not have an opportunity to cross-examine her. Plaintiffs further argue that they were denied an opportunity to rebut the contents of the summary prepared by commission member Kleinschmidt. The crux of the plaintiff's argument is that the commission acted arbitrarily and in abuse of its discretion by denying the application without substantial evidence on the record that could reasonably support its decision.
Plaintiffs' reliance on Feinson, supra, for the proposition that, in technically complex matters, expert testimony is the only acceptable substantial evidence, is misplaced. Plaintiffs' reading of Feinson, supra, is too concerned with fundamental fairness. Id., 429 [citing to Feinson]." Id. Unlike the commission in Feinson, supra, the commission in the present case placed all relevant facts on the record and shared its concerns and objections with the plaintiffs. Id. The record showed active and probing participation by agency members in questioning plaintiffs' experts. Kaeser, supra, 316. Further, the matters before the commission were not of such complex and technical nature CT Page 2162 that only experts could provide the basis for substantial evidence.
Plaintiffs argue that Peter Gillespie, who raised concerns about the proposal and concluded alternatives were available, is not an expert. (See ROR #23). Mr. Gillespie has four and one half years of experience in wetland matters as a Wetland Enforcement Official and holds a Bachelor's degree in Geology and a Masters degree in Urban and Regional Planning. (ROR #25, p. 20). In Huck, supra, the court characterized agency staffer Michael Aurelia, who held a degree in geology and geological science, as an expert and held his staff report could be used to contribute to the substantial evidence supporting the denial. Huck, supra, 548-49. In Kaeser, supra, the court approved of a report and recommendation of a nonexpert conservation enforcement officer and upheld the agency's denial of the permit when the only expert testimony was that offered by the applicant. Kaeser, supra, 312-15, citing Huck, supra. Clearly Peter Gillespie's reports and comments may be used to contribute to the substantial evidence supporting the denial. See Kaeser, supra, 312-15, 17.
Plaintiffs also argue that the reports of Denise Conkling, district manager of the Hartford County Soil and Water Conservation District, should be disregarded "because her credentials are unknown, its contents do not relate to the present Application and the Applicant did not have an opportunity to cross-examine her." (Plaintiffs' brief, p. 14). Ms. Conkling's reports also raised concerns and made recommendations and suggestions for the commission to consider with regard to modifications and/or additions to the proposal. (ROR #2, 8).
Section 6.8.a of the Inland Wetland Regulations require that an application such as this one be submitted to the Hartford County Soil and Water Conservation District for review and comment. (ROR #1). The expertise of this office is relied upon by towns such as Marlborough for technical review and opinion. Denise Conkling is the district manager of that office. (ROR #2, 8). Plaintiffs' expert Mr. Kortmann stated that he knew of Denise Conkling "from many other jobs" and in fact met with her to review this project and his findings. (ROR #25, P. 48).
The credibility of the witnesses and the determination of factual issues are within the province of the agency. Huck, supra, 539-40. The Gillespie and Conkling materials and testimony in the record were proper for the commission to consider and may be used to contribute to the substantial CT Page 2163 evidence in support of the denial. See Kaeser, supra, 314-15.
In addition, plaintiffs argue that they did not have an opportunity to cross-examine Denise Conkling. Plaintiffs knew of the Conkling reports in advance of the filing of the present application. (ROR #4). Plaintiffs' expert Mr. Kortmann met with Denise Conkling in preparation for the public hearing. (ROR #25, P. 48). Plaintiffs apparently did not subpoena Denise Conkling for the June 5, 1990, public hearing but rather invited her. (ROR #25, p. 33). If the plaintiffs were concerned about cross-examining Denise Conkling, as plaintiffs argue, then the plaintiffs could have requested a continuance so that she could be brought before the commission to be cross-examined. Since plaintiffs did not raise this concern during the hearing before the commission on July 9, 1990, the board properly considered Denise Conkling's reports. See Welch v. Zoning Board of Appeals, 158 Conn. 208, 213, 257 A.2d 795 (1969). The record does not reflect that the commission denied the plaintiff the opportunity to cross-examine Denise Conkling.
Plaintiffs argue that they were denied an opportunity to rebut the contents of a summary prepared by commission member Kleinschmidt. (ROR #30). The summary review, (ROR #30), is a summary of his personal observations of the area and of what has transpired at the public hearing and of the other elements of the record. As such it does not differ in nature or effect from the chairman's report in Brookfield Plaza Limited Partnership v. Zoning Commission, 21 Conn. App. 489,574 A.2d 825 (1990), which the court allowed as fair and held not to require an opportunity for rebuttal. Brookfield, not to require an opportunity for rebuttal. Brookfield, supra 494; see also Connecticut Natural Gas Corp. v. PUCA,183 Conn. 128, 137-38, 439 A.2d 282 (1981).
One reason for the denial was that the road wetland crossing could be done in a better way. (ROR #31, P. 113). This reason finds support in several portions of the record. The report from Denise Conkling dated August 7, 1989, states that "it does not seem prudent to allow the road wetland crossing for just a few lots. . . ." (ROR #2). This was echoed in Peter Gillespie's reports of December 19, 1989, par. 6, (ROR #4), and May 29, 1990, (ROR #23).
Another reason for the denial was that a driveway crossed lots 3 and 4. (ROR #30, p. 8). This crossing was also questioned by the reports submitted by Denise Conkling dated August 7, 1989, (ROR #2), and March 2, 1990, (ROR #8). The Gillespie report of May 29, 1990, (ROR #23), pointed out CT Page 2164 that alternatives such as the removal of lot 3 and a common drive for lots 4 and 5 should be considered. The commission was not persuaded that the plaintiffs' experts had considered all feasible and prudent alternatives, (see ROR #30 pp. 8-9), and the record supports the commission's conclusion on this
Another reason for denial was concern about and the availability of alternatives to directing road runoff in or near a brook rather than into detention basins. (ROR #31, p. 115, ROR #30, pp. 6-7). A significant portion of the road drainage was designed to be discharged at or near a brook as opposed to being directed into the proposed sedimentation basin on lot 4 or to an additional sedimentation basin on the other side of the road. (ROR #25, pp. 51-52). Plaintiffs' expert, Mr. Kortmann, testified that in order to direct all storm water runoff into detention basins the road profile would have to be substantially raised in order to raise the invert on the culvert that would then carry the water into a basin. (ROR #25, p. 51). However, Mr. Kortmann agreed that generally, discharges directly into brooks are to be avoided as environmentally unsound. (ROR #25, p. 52). Although Mr. Kortmann tried to answer the commission's concerns on this point, (ROR #25, pp. 51-6), the credibility of witnesses and the determination of factual matters is the province of the agency. Kaeser, supra, 311.
Another reason for the denial was that the application had not considered the various alternatives which the had not considered the various alternatives which the commission suggested might be feasible and prudent, such as lot elimination, lot line revision, relocation of road or cul-de-sac location, etc. (ROR #31, 30 and 23). The record makes references to alternatives not considered by the plaintiffs. (See, e.g., ROR #30 and Mr. Gillespie's report dated May 29, 1990 (ROR #23).
Site walks were conducted by the commission on May 13, 1989, (ROR #40), December 9, 1989, (ROR #45), and May 23, 1990, (ROR #22). Knowledge obtained by commission members through personal observation of the locus may properly be considered by the commission in arriving at reasons given for its denial. Huck, supra, 547, citing Manor Development Corporation v. Conservation Commission, 180 Conn. 692, 697,433 A.2d 999 (1980). Pursuant to General Statutes22a-41(a) the commission is charged with considering all the factors delineated in General Statutes 22a-41. Additionally, the commission cannot issue a permit unless it can find that a feasible and prudent alternative does not exist. General Statutes 22a-41(b); A.D.A.M. Land Dpmt. Corp. v. Conservation Comm., 21 Conn. App. 122, 572 A.2d 364. CT Page 2165
The commission in denying the application concluded that feasible and prudent alternatives existed. (ROR #20, 25 and 31). Therefore, pursuant to General Statutes 22a-41 and A.D.A.M. Land Dpmt. Corp., supra, the commission, in so concluding, properly did not grant the application. We conclude that the commission did not act arbitrarily and in abuse of its discretion by denying the application. We find that the commission's decision is supported by substantial evidence. Accordingly, this appeal is dismissed.
MARY R. HENNESSEY, JUDGE