[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
FACTS
On December 9, 1991, the Applicant, Westwood Park, Inc., applied to the Town of Tolland Planning and Zoning Commission for approval of a fifteen lot residential subdivision. The Applicant proposed to construct fifteen single-family homes and two roadways on an open-space parcel of approximately 28 acres of land located on the north and west side of Dockerel Road.
A Public Hearing on the Application was commenced on January 13, 1992 and continued on January 27, 1992 and February 10, 1992. A special meeting was held on February 2, 1992 when some members of the Commission and representatives of the Plaintiff walked the subject property and the Plaintiff's adjoining land. On February 24, 1992 the Commission voted to approve the application with stipulations.
AGGRIEVEMENT
The Plaintiff's property is located immediately adjacent to and north of the subject property. The Plaintiff's property is a largely wooded tract of land which contains two ponds and several streams and is used for hunting, fishing CT Page 5780 and other recreational purposes by it's 800+ membership. As an abutting land owner, the Plaintiff is aggrieved by the decision of the Commission. The Court finds aggrievement within the meaning of Connecticut General Statute 8-8.
ISSUES
 1. Did the Commission err when it approved the plan with a turnaround having a 45 foot radius at the cul-de-sac at the end of Paula Joy Lane?
 2. Did the Commission err by approving a plan which allowed drainage onto adjoining property without the obtaining of an easement as required by Section 4.4.4 of the Tolland Subdivision Regulations?
 3. Did the Commission err by allowing a subdivision on property contrary to uncontroverted evidence of existing contamination?
DISCUSSION
 I
The Cul-De-Sac
The supplement to the record filed on July 13, 1992 by the Plaintiff includes additional sections of the Town of Tolland Subdivision Regulations. Section 4.2 of those Regulations provides that a "permanent residential turnaround" will have a paved radius of 50 feet and that a "temporary turnaround" will have a paved radius of 40 feet. The plan as approved calls for a radius of 45 feet. The Tolland Subdivision Regulations in Section 166-5, definitions, contains the following definitions:
 "Permanent cul-de-sac: A turnaround at one (1) end of a street which is closed by building lots or buildings."
 "Temporary cul-de-sac: A turnaround at one (1) end of the street which is not closed by building lots CT Page 5781 or buildings thereby making it possible to further extend the street."
After considering the record and the arguments of the parties the Court concludes that "cul-de-sac" and "turnaround" are used interchangeably in the Tolland Regulations.
The Plaintiff argues that the Planning Commission granted the applicant a hardship variance pursuant to the provisions of Section 4.11.1 of the Tolland Regulations and Section 8-26 of the General Statutes. The Plaintiff further argues that the record does not support granting of such a variance. The Court agrees with the Plaintiff that the record does not support the granting of such a variance. Neither the standards of Section 4.11.1 of the local regulations nor the requirements of 8-26 of the General Statutes are met in the case before the Court. However, the Court does not agree with the Plaintiff that the Tolland Planning and Zoning Commission was attempting to grant a variance in the instant case.
The Court notes that in Exhibit 33, a memorandum to the Chairman of the Commission from the Town Planner, the following comment is contained: "The temporary cul-de-sac at end of Paula Joy Lane must be redrawn to show a 45 foot radius pavement." The Court is aware of the fact that there is some dispute over whether the appropriate number in the quote is 45 feet or 40 feet. The real significance of the quote lies in the uncontradicted reference to a temporary cul-de-sac. of a similar nature is a memo from the Town Planner to the Director of Community Development dated February 10, 1992 and contained in the record as Exhibit 57. The Town Planner concludes:
 "I believe the cul-de-sac is more of a Zoning issue than one of engineering. Technically that portion of Paula Joy Lane may only provide access to a single lot. Lot 6 could have a drive off of Higgins Way even though a possible location is shown from Paula Joy Lane on the plan. In either case a road that can be extended in the future which serves one or two lots does not require a cul-de-sac. The proposed turnaround should be considered acceptable."
CT Page 5782
The Court concludes that the Planning and Zoning Commission did not intend to grant a variance for hardship but rather could reasonably have concluded either that no cul-de-sac was required or that it was a temporary cul-de-sac with a minimum radius of 40 feet. Under these circumstances, the plan calling for a 45 foot radius is not violative of the local regulation.
 II
Drainage
 Section 4.4.4 of the regulation clearly provides: "[w]here the discharge will be into private property adjoining the proposed sub-division, proper easements and discharge rights shall be secured by the applicant for the Town before approval of the final map and acceptance of the drainage plan unless such discharge is into an established water course." Supplemental Record Regulations Section 4.4.4.
There was considerable discussion and argument at the Public Hearing concerning the issue of whether or not the Applicant would be discharging water from the proposed subdivision onto the Plaintiff's property in excess of established watercourses.
The following evidence, contained in the record, supports the conclusion of no runoff or of discharge into an established watercourse.
 1. "Torcellini stated that the peak run-off flow of this property will not change, that the existing wetland will be dug out approximately one-foot to create a storm water detention area and that all work will be done within the existing wetland area;" (Exhibit 39)
 2. "Again, the numbers that we generated through the TR20 program on run-off and detention which we have submitted and been looked at would show that the net peak flow off this property would not change from what is now to CT Page 5783 what is there mainly because of the detention basin and trying to get all the road on Paula Joy into that basin for renovation and retention before it is discharged." (Transcript of Public Hearing Exhibit 62, page 11.)
 3. "Ken Peterson: . . . . So there will not be any impact of the natural drainage flows or ponding of any drainage on our property or on their property." (Transcript of Public Hearing Exhibit 62, pages 82-83.)
An administrative agency is not required to believe any witness, even an expert. Manor Development Corporation v. Conservation Commission, 180 Conn. 692, 697 (1980). In conducting its review, a Court must defer to the agency's assessment of the credibility of the witnesses. Connecticut Light and Power Company v. Department of Public Utility Control, 216 Conn. 627, 639-640 (1990). If a review of the records supports the agency's action, it should be sustained. Westport v. Norwalk, 167 Conn. 151, 161 (1974); Kaeser v. Conservation Committee, 20 Conn. App. 309, 314 (1989); and Gagon v. Inland Wetlands of the Town of Bristol, 213 Conn. 604,605 (1990).
From the record before it the Court finds that the Tolland Planning and Zoning Commission could reasonably have concluded that the drainage from the proposed subdivision either would not impact adjoining property or would be into an established watercourse.
 III
Contamination
Finally, the Plaintiff claims that there was uncontroverted evidence of contamination at the site in violation of both the Town Subdivision Regulations and Connecticut General Statutes. Testimony of witnesses, including a professional engineer and a soil scientist stated that coliform is a very abundant bacteria. (Record Exhibit 62 at page 81 and 87.) The report of Analytical Water Tests of Tolland dated November 15, 1991 states "based upon the above parameters this water is classified as not safe for general CT Page 5784 use and for drinking purposes under existing circumstances due to the presence of coliform bacteria. This is typical for ponds and should not be cause for alarm." (Exhibit 16.) The Sanitarian concluded that in his opinion the lots were capable of supporting private subsurface sewer disposal systems. (Transcript Exhibit 62 and pages 2-3.)
While the Plaintiff's expert Ms. Obeda testified extensively about "piping" her testimony was contradicted by soil scientist Ianni, (Exhibit 62, Transcript page 70-75).
As with the run-off question, the Court concludes on the question of contamination that while there was ample evidence to support the Plaintiff's position, there is sufficient evidence to support the Commission's conclusion.
It is the Court's obligation to give due deference to the determinations by an administrative agency at the local level. The Court finds that the Commission did not abuse its discretion when it concluded that the site was free of such pollution as would be violative of Sections 8-2 or 8-25 of the General Statutes or violative of Section 166-10(G)(5) or Section 166-11(B) of the local regulation.
In conclusion the Court finds that the Planning and Zoning Commission of the Town of Tolland did not attempt to grant a hardship variance, rather it concluded either that no cul-de-sac was required or that this was a temporary cul-de-sac. Further, while there was contradictory evidence from the Plaintiff's expert, the Court holds that the Commission did properly find there was no improper diversion of water onto adjoining property end that there was not impermissible contamination on the property which would prevent its use as a subdivision.
The decision of the Planning and Zoning Commission of the Town of Tolland is affirmed. The Appeal is dismissed.
BY THE COURT,
Kevin E. Booth, J. Judge, Superior Court CT Page 5785