[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
These administrative appeals pertain to the Environmental Impact Commission's (hereafter "EIC") denial of two separate applications submitted by plaintiff to conduct regulated activities in wetlands. By way of complaints dated December 2, 1991, October, 5, 1992, and an amended complaint dated February 15, 1993, plaintiff has appealed the EIC's denial of each of her applications. The two appeals were ordered consolidated by the court (West, J.) on January 11, 1993.
Plaintiff is the owner of approximately 1.5 acres designated as Lot 13, Ohehyahtah Place, Danbury, Connecticut (the "Property"). The plaintiff is found to be aggrieved for the purposes of bringing these appeals. The Property is not an approved subdivision lot. The August 3, 1966 minutes of the Danbury Planning Commission indicate that the Property, which was part of a 13 lot proposed subdivision, was not given subdivision approval because it was wet.
The Property is entirely within wetlands and the 100 year flood plain. Because it consists of only poorly and very poorly drained soils, the lot is subject to frequent flooding. The Property lies in a valley bottom in which two brooks join to form Blind Brook and continue to flow north. The Property CT Page 11025 is part of a larger 20.5 acre wetland corridor.
On June 26, 1991, the plaintiff applied to the EIC for a permit to construct a single family home on the Property. The home was to be built on 18 concrete piers set into the wetlands. A 20 foot by 120 foot gravel driveway down a slope was to be constructed. The driveway was to have a 40 foot by 15 foot parking area at top. A 65 foot by 5 foot and a 15 foot by 20 foot accessway built of wood decking on concrete posts would connect the driveway to the home. Plaintiff proposed to hook up to an existing public sewer main located to the east across Blind Brook. To achieve this, plaintiff's engineer proposed to excavate a 10 foot by 150 foot trench across the brook and to install in the trench a forced main sewer pipe extending from the home to the existing public manhole. Plaintiff's only means of temporarily storing waste would be by use of a 48 hour holding tank with a malfunction alarm.
The EIC considered plaintiff's first application at public hearings held on June 26, September 11 and 25, 1991. Plaintiff employed the efforts of a soil scientist, Henry Moeller; a professional engineer, Jeannie Williamson; an architect, Ray Sullivan; and introduced a biological report prepared by a Mr. Darnell into the record. Plaintiff, along with her counsel, attended each of the public hearings.
The purpose of the soil report was to locate and flag all wetlands soils. The report indicated that "most of the lot consists of poorly drained and very poorly drained soils." Plaintiff's soil scientist determined that the poorly drained soils located in the higher elevation of the northwest corner of the lot would be the most suitable for development. The report concluded that there would be minimal disturbance to the lot and that the area would remain in its present condition as a forest and shrub wetland.
Also before the EIC was an environmental assessment report submitted by Mr. Jack Kozuchowski, Coordinator of Environmental and Occupational Health Services for the City of Danbury. Mr. Kozuchowski calculated that plaintiff's development would destroy 13,650 square feet or .32 acres of wetlands. Mr. Kozuchowski further indicated the development would have the additional effect of bisecting the larger wetlands corridor. He reported that the largest impact caused CT Page 11026 by the development would be the elimination of a significant amount of wildlife habitat. Mr. Kozuchowski recommended that the Commission either deny plaintiff's application, or approve it with conditions.
The application was opposed by neighboring residents. No less than nine neighbors, based upon their familiarity with the area, vocalized concerns over flooding, erosion, pollution, loss of valuable wetlands and impairment of the larger wetlands corridor. The Commission members were familiar with the location, and had visited the site.
On November 13, 1991, the EIC denied plaintiff's application without prejudice pursuant to sections 7.1.D.1, 7.1.D.3 and 7.1.G[1] of the Danbury Inland Wetlands and Watercourses Regulations (hereafter "Regulations"). The EIC adopted the following reasons for its denial:
 1. If the construction of the project were allowed it would split the corridor into two distinct wetlands that would significantly magnify the impacts that Mr. Kozuchowski's Health Department report concluded. Specifically in the post construction stage the ecological integrity of the property, the wildlife, and the outstanding space characteristics.
 2. The construction of the proposed residence and associated parking and driveway would result in an irreversible and irretrievable loss of wetlands due to the necessary filling and alteration of the site. These wetlands provide wildlife habitat as well as flood control and act as a buffer area to control sedimentation and erosion into Blind Brook.
 3. The construction of this project would result in a loss of buffer area along Blind Brook and discontinuity of the narrow wetland area that runs the length of Blind Brook in both directions of the proposed activity.
 4. The activity is not suitable for the proposed location due to its location in a completely wetland area and close proximity to a perennial watercourse. The potential for pollution of the CT Page 11027 wetlands and Blind Brook is increased significantly due to the location of an outdoor, underground sewage holding tank and normal activities associated with a residence.
 5. Approval of this activity-construction in a lot that is completely wetlands and within 40 feet of a perennial watercourse could set an undesirable precedent that encourages future development in other or adjacent wetlands areas and thus weakens the wetland protection goals.
Plaintiff appealed the EIC's denial of her first application by way of complaint dated December 2, 1991.
While plaintiff's first appeal was pending, she filed a second application with the EIC on May 21, 1992. All evidence supporting the first application was incorporated into the record for the second application. The only difference between plaintiff's 1991 application and the second one was that plaintiff proposed to reclaim a lawn area existing on the Property by introducing wetlands plantings. The lawn to wetlands conversion was recommended by Mr. Kozuchowski as a condition for approval of plaintiff's first application. The lawn conversion proposal, therefore, had already received the Commission's consideration.
A supplemental environmental assessment report was submitted to the EIC by Mr. Mark Massoud, Environmental Inspector for the City of Danbury, on behalf of the Health Department. Mr. Massoud's report did not assume that wetland disturbance would stay within the limits represented by plaintiff's engineer and other witnesses. Mr. Massoud stated:
 "Our past experience has shown that it is impractical and difficult to enforce a condition that requires the grounds adjacent to a dwelling to remain natural vegetation. Certainly a swath of a minimum of 15 to 20 feet will be disturbed during construction of the house and installation of the driveway and force main. Necessity and practicality dictate the need for a cleared area of maintained lawn surrounding a dwelling. Therefore, the mitigation value of returning disturbed areas to natural vegetation on such a small parcel is CT Page 11028 dubious."
The merits of plaintiff's second proposal were vigorously advocated and opposed during public hearings held on August 26, 1992 and September 9, 1992. And again, neighboring residents expressing concerns similar to those over the first application testified in opposition to the proposed development.
On September 23, 1992, the EIC denied plaintiff's second application to conduct regulated activities in wetlands. The EIC adopted the following reasons for its denial:
 1. The construction of the proposed residence and associated parking and driveway would result in an irreversible and irretrievable loss of wetlands due to the necessary filling and alteration of the site. These wetlands provide wildlife habitat as well as flood control and act as a buffer area to control sedimentation and erosion into Blind Brook.
 2. The proposed project is located in a wetland area that is part of a much larger multi-functional ecosystem, that being a 20 acre contiguous wildlife/wetland corridor, which the proposal would essentially bisect.
 3. The construction of this project would result in a loss of buffer area along Blind Brook and significantly change the character of the wetland.
 4. Finally, it has not been shown that a prudent and feasible alternative does not exist.
The plaintiff appealed the EIC's denial of her second application byway of complaint dated October 4, 1992.
Appellate review of the EIC's decision is limited to a determination of whether the agency's action was arbitrary, illegal, or otherwise not reasonably supported by the evidence. Madrid Corporation v. Inland Wetlands Agency,25 Conn. App. 446, 449 (1991). The determination of factual issues and credibility of witnesses are matters exclusively within an agency's province and are not subject to judicial review. Kaeser v. Conservation Commission, 20 Conn. App. 309, CT Page 11029 311 (1989). The EIC's denial in each case must be sustained if there is substantial evidence in the record to support just one of the reasons given. Id., 311. Further, "`the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. . . .'" Huck v. Inland Wetlands Watercourses Agency, 203 Conn. 525, 542
(1987), quoting American Textile Manufacturers Institute, Inc. v. Donovan, 452 U.S. 490, 523 (1981). Even if the reasons given by the agency are insufficient, the reviewing court must "`search the record for reasons to support the agency's decision.'" Kaeser v. Conservation Commission, supra, 311-12, quoting Huck v. Inland Wetlands Watercourses Agency, supra, 528.
The court is satisfied that the fourth reason given by the EIC in each of its decisions is sufficient to justify their decision denying the plaintiff's application in each case, and that there is substantial evidence upon which to base its decisions.
In both applications, the plaintiff proposed that it would connect the sanitary sewer servicing the proposed structure that was to be located on the west side of Blind Brook to a sanitary sewer line located on the east side of Blind Brook. The record indicates that a sanitary sewer line is also located on the west side of Blind Brook in Ohehyahtah Place, permitting the proposed house to have a sanitary sewer connection without disturbing the area east of the proposed house, including not requiring the excavation of Blind Brook to extend the sewer line across and below said brook. The only reason given for this greater disturbance to the wetlands, necessitated by this brook crossing, was the additional expense required to bring the sewer line up to Ohehyahtah Place.
The choice made by the plaintiff to propose an unneeded brook crossing certainly indicates that this "activity is not suitable for the proposed location due to its location in a completely wetland area and close proximity to a perennial watercourse" and that "it has not been shown that a prudent and feasible alternative does not exist."
On February 15, 1993, plaintiff amended her complaint for the sole purpose of alleging as a further ground for reversal CT Page 11030 that the permit denial was improper under section 22a-40(a)(2) of the General Statutes according to the recent decision of Paupack Development Corp. v. Conservation Commission,8 Conn. L. Rptr. No. 7, 223, 225-27 (1993).
Section 22a-40(a)(2) provides in pertinent part:
 The following operations and uses shall be permitted in wetlands and watercourses, as of right . . . a residential home (i) for which a building permit has been issued or (ii) on a subdivision lot, provided the permit has been issued or the subdivision has been approved by a municipal planning, zoning or planning and zoning commission as of the effective date of promulgation of the municipal regulations pursuant to subsection (b) of section 22a-42 or as of July 1, 1974, whichever is earlier, and further provided no residential home shall be permitted as of right pursuant to this subdivision unless the permit was obtained on or before July 1, 1987.
Plaintiff in Paupack applied to the defendant conservation commission for a permit to construct a residence on an approved subdivision lot which it owned.8 Conn. L. Rptr. No. 7, at 224. The commission denied the application, concluding that the 1987 amendment to Connecticut General Statutes, Sec. 22a-40(a)(2) did not operate to permit the construction of the home as of right because the plaintiff had not obtained a building permit by July, 1987. The Superior Court overturned the commission and explained that a residential home "`shall be permitted in wetlands and watercourses as of right' under two situations: (1) if a building permit has been issued prior to the date of the regulations or (2) the subdivision lot was approved by the planning commission before the inland wetland regulations" were adopted. Paupack Development Corp. v. Conservation Commission, supra, 226. Paupack sustained plaintiff's appeal because, although plaintiff had not obtained a building permit, it did have an approved subdivision lot and was therefore exempt from the commission's inland wetland regulations. Id., 226.
Whatever the merits of the Paupack court's interpretation of section 22a-40(a)(2), the decision does not apply here. CT Page 11031 The record in these appeals shows that plaintiff does not have an approved subdivision lot, nor has she obtained a building permit. Paupack, therefore, is wholly inapposite. The Property in this case is not an approved subdivision lot and is therefore not exempt from the Danbury Inland Wetland Regulations.
Plaintiff's inverse condemnation claim is not ripe for adjudication because she has not established the requisite finality.
A plaintiff is not entitled to judicial review of the merits of an inverse condemnation claim until he has established the finality of the agency's decision. Gil v. Inland Wetlands Watercourses Agency, 219 Conn. 404, 415
(1991). In Gil, the Connecticut Supreme Court stated that to demonstrate the requisite finality, a property owner asserting a regulatory takings claim bears the burden of proving that the relevant government entity will not allow any reasonable alternative use of his property. Gil v. Inland Wetlands Watercourses Agency, supra, 415, citing Huck v. Inland Wetlands Watercourses Agency, 203 Conn. 525, 553 (1987).
As discussed above, the plaintiff, as to just one part of her proposal, has yet to show that no prudent alternatives to her proposal are available, thus requisite finality has not been shown.
For the foregoing reasons, the plaintiff's appeals in each of these cases are dismissed.
Stodolink, J.