WILLIAM MILARDO *v.* INLAND WETLANDS COMMISSION
OF THE TOWN OF HADDAM ET AL.
(9961)

DALY, FOTI and FREEDMAN, Js.

Argued January 7—decision released March 31, 1992

*Thomas P. Byrne,* for the appellant-appellee (named defendant).

*Vincent T. McManus, Jr.,* for the appellee-appellant (plaintiff).

DALY, J. The named defendant[1] Haddam inland wetlands commission appeals from the trial court's decision reversing the commission's denial of the plaintiff's permit application. The commission claims that the trial court improperly found that its denial of the plaintiff's permit was not supported by substantial evidence. In his cross appeal, the plaintiff claims that, after concluding that the denial of the application was arbitrary, the trial court should have determined whether the evidence supported an order to grant the application. In essence, the plaintiff claims that the court should have granted his application if it found that there was substantial evidence supporting the application, instead of remanding the case to the commission for further proceedings. We affirm the trial court's judgment.

The trial court found the following facts. The plaintiff's agent sought a permit to conduct regulated activities in certain wetlands located in the town of Haddam. The permit proposed the construction of a driveway crossing the wetlands. The permit also requested permission to build a single-family house with an on-site

[1] The other defendants included the Connecticut department of environmental protection, the town of Haddam and the conservation enforcement officer for the town of Haddam. These other defendants are not involved in this appeal.

well and septic system on the plaintiff's property. There were a series of hearings held by the commission concerning the plaintiff's permit. The commission rejected the plaintiff's permit application at a meeting on February 8, 1990.[2]

Pursuant to General Statutes § 22a-43, the plaintiff appealed to the Superior Court from the commission's denial of his application for a permit. The court, after reviewing the evidence, concluded that, on the basis of the minutes of the February 8, 1990 meeting, the commission properly considered the statutory factors listed in General Statutes § 22a-41 (a)[3] and gave its rea-

---

[2] The commission denied the application on the basis of its application of General Statutes § 22a-41. The defendant found that:

"1. Significance of the Environmental impact of the activity.
    a. a large wetland crossing is required
    b. inability to develop the site without encroaching on the buffer zone set backs

"2. The unsuitability of the area to the use proposed.
    a. the site is largely wetland and the only buildable area is severely limited by wetland setbacks.

"3. Balance between benefit and loss is very poor.
    a. the project proposes no environmental benefits and at the same time there is a loss of wetland and possible addition of impacts on the wetlands after construction by situation and septic tank failures.

"4. It is an irreversible use of resources and it is short term use of the environment with no enhancement of long term productivity.
    a. the project provides a long term irreversible loss of wetland and associated habitat."

[3] General Statutes § 22a-41 (a) provides: "In carrying out the purposes and policies of sections 22a-36 to 22a-45, inclusive, including matters relating to regulating, licensing and enforcing of the provisions thereof, the commissioner shall take into consideration all relevant facts and circumstances, including but not limited to:

(1) The environmental impact of the proposed action;

(2) The alternatives to the proposed action;

(3) The relationship between short-term uses of the environment and the maintenance and enhancement of long-term productivity;

(4) Irreversible and irretrievable commitments of resources which would be involved in the proposed activity;

(5) The character and degree of injury to, or interference with, safety,

sons for denying the permit on the record as required by General Statutes § 22a-42a (d).[4] The court reviewed the transcript of the public hearings of December 11, 1989, and January 8, 1990, concerning the plaintiff's application. It found that the transcript contained many omissions, mistakes and gaps which rendered them "incomprehensible." These transcripts failed to provide any evidential support for the commission's action. There was no transcript of the February 8, 1990 meeting. The court then reviewed the minutes from all of the public hearings involving the plaintiff's permit. The minutes of these meetings provided a sufficient record of what occurred to enable the court to determine if there was substantial evidence to support any of the commission's findings. After reviewing the remaining evidence, the court concluded that the denial of the permit was not supported by substantial evidence. The court sustained the plaintiff's appeal and remanded the action to the commission for further proceedings.

The commission claims that there was substantial evidence on the record to support its denial of the permit. According to the commission's argument, the trial court substituted its own judgment for that of the agency's judgment in sustaining the plaintiff's appeal. We disagree.

The trial court must search the record of the agency hearings to determine whether there was an adequate

---

health or the reasonable use of property which is caused or threatened; and
  (6) The suitability or unsuitability of such activity to the area for which it is proposed."

  [4] General Statutes § 22a-42a (d) provides in pertinent part: "In granting, denying or limiting any permit for a regulated activity the inland wetlands agency shall consider the factors set forth in section 22a-41, and such agency shall state upon the record the reason for its decision. In granting a permit the inland wetlands agency may grant the application as filed or grant it upon such terms, conditions, limitations or modifications of the regulated activity, designed to carry out the policy of sections 22a-36 to 22a-45, inclusive. . . ."

basis for the inland wetlands commission's decision. *Gagnon* v. *Inland Wetlands & Watercourses Commission,* 213 Conn. 604, 611, 569 A.2d 1094 (1990); *Kaeser* v. *Conservation Commission,* 20 Conn. App. 309, 312, 567 A.2d 383 (1989). The agency is responsible for assessing witnesses' credibility and reviewing factual findings. *Lawrence* v. *Kozlowski,* 171 Conn. 705, 708, 372 A.2d 110 (1976), cert. denied, 431 U.S. 969, 97 S. Ct. 2930, 53 L. Ed. 2d. 1066 (1977). This court will not disturb an agency decision as long as there is substantial evidence in support of any one reason given for the agency's action. *Huck* v. *Inland Wetlands & Watercourses Agency,* 203 Conn. 525, 539–40, 525 A.2d 940 (1987); *Tanner* v. *Conservation Commission,* 15 Conn. App. 336, 339, 544 A.2d 258 (1988).

We agree with the trial court that the transcripts of the December 11, 1989 and January 8, 1990 public hearings are inadequate and fail to provide any support for the commission's denial of the application. Both transcripts fail to identify the speakers and are replete with omissions. The transcripts reveal that there was some questioning of the plaintiff's proposal to build a culvert across the wetlands. The commission members, for example, inquired about whether a bridge would better preserve the wetlands area. There was, however, no final resolution of this concern placed on the record by the members during these meetings.

The minutes of the meetings held by the commission concerning this application also failed to provide substantial evidence supporting the commission's denial of the permit. According to the minutes of the November 13, 1989 meeting, three members of the commission visited this site. One member expressed his concern about the proposal to another member. There was, however, no mention of what this concern specifically related to regarding the plaintiff's proposal nor were there any findings in the record concerning the visit

conducted by the members. The minutes of the December 11, 1989 meeting indicate that the plaintiff was questioned about his intention to use the twenty-four inch concrete culvert for the driveway crossing over the stream. The commission members asked whether a bridge should be used instead of a culvert, but there was no reason stated for suggesting why the bridge would be better than the culvert. The minutes of the January 8, 1990 meeting indicated that the plaintiff was questioned further about the sheet flow that would result from the building of the culvert across the stream. The plaintiff responded that he had not done any calculations with regard to the sheet flow. One member expressed concern that the plaintiff's proposal would result in an island being created during heavy flow which could lead to erosion. The member felt that the use of a bridge instead of a culvert would probably cure this problem and prevent the occurrence of erosion.

A letter from the town engineer concerning the plaintiff's proposal was also entered into the record at this meeting. On the basis of his initial review, the town engineer stated that the plaintiff's proposal appeared to be satisfactory. The town engineer was unable to give formal approval because of a backlog of cases. The letter indicated that the detailed analysis of the proposal probably would be completed by the end of January, 1990. The final conclusion reached by the town engineer regarding the plaintiff's proposal was not made a part of this record. The minutes of the February 8, 1990 meeting provide some evidence of the commission's reasons for denying the permit. One member voiced his concerns for the wetlands crossings and possible damage from the plaintiff's proposal. There was no listing in the minutes of what these concerns were or the possible damage that might occur. There was also no basis given for the member's concerns. Another

member of the commission stated, "This is an extremely valuable wetlands because of the constancy of water. This would disrupt one of the best areas for small animals." Again there was no basis given for this opinion, which contradicts the expert testimony offered by the plaintiff.

Section 10.5 of the Inland Wetlands and Watercourses Regulations of the town of Haddam prohibits the commission from using material or evidence not part of the public hearing record in reaching its decision. The record reveals that members of the commission conducted two visits to the plaintiff's land. "Knowledge obtained through personal observations of the locus may properly be considered by the agency in arriving at reasons given for its denial." *Huck* v. *Inland Wetlands & Watercourses Agency,* supra, 547. The record does not contain any findings concerning the on-site inspections of the plaintiff's land. It is unclear what the commission discovered because there is no discussion on the record about these visitations. In order to use the knowledge gained from the visits, the commission was required by its regulations to make its findings part of the record.

The commission argues that this case is controlled by our decision in *Kaeser* v. *Conservation Commission,* supra. In *Kaeser,* the plaintiffs challenged the trial court's finding that there was substantial evidence supporting the commission's denial of the plaintiffs' application. In its denial, the commission stated that " 'the proposed activity will create conditions which may significantly and adversely effect the health, welfare and safety of the community and the Mill River environment.' " Id., 311. The plaintiffs in *Kaeser* argued that this reason was "merely a conclusory statement and not a reason for denying a permit." Id. Our search of

the record in *Kaeser* revealed that there was substantial evidence supporting the commission's denial of the plaintiffs' application.

The facts of *Kaeser* v. *Conservation Commission,* supra, are distinguishable from the facts of this case. The record in *Kaeser* revealed that there was a report by a conservation enforcement officer recommending the denial of the plaintiffs' application. Id., 312. An engineer retained by the commission also suggested alterations to the plaintiffs' proposal but the record failed to indicate whether the plaintiffs incorporated these alterations into their proposal. Id. In the present case, there is nothing in the record from any public officials recommending a denial of the plaintiff's application because of its detrimental effect on the wetlands. In fact, the town engineer's initial review approved of the plaintiff's proposal.

At the four public hearings held in *Kaeser,* several neighboring landowners testified about their fear of flooding and concerns that the plaintiffs' proposal would increase the flooding. Id., 315. In this case, none of the neighboring landowners, all of whom were notified, appeared at any of the hearings to oppose the plaintiff's application. The plaintiffs in *Kaeser* were also given a chance to offer additional evidence after the commission denied their application but the plaintiffs failed to take advantage of this opportunity. Id. In *Kaeser,* there was no contrary expert testimony rebutting the plaintiffs' expert testimony in support of their application. Expert testimony was unnecessary in *Kaeser* because there was substantial evidence on the record offered by nonexperts to justify the commission's denial of the plaintiffs' application. The record evidence in the present case, both from experts and nonexperts, fails to establish substantial evidence in support of the commission's denial of the plaintiff's application.

Our Supreme Court has stated that "a lay commission acts without substantial evidence, and arbitrarily, when it relies on its own knowledge and experience concerning technically complex issues . . . in disregard of contrary expert testimony . . . ." *Feinson* v. *Conservation Commission,* 180 Conn. 421, 429, 429 A.2d 910 (1980). The determination of what constitutes an adverse impact on a wetlands is considered to be a technically complex issue. See *Tanner* v. *Conservation Commission,* supra, 341. In *Tanner,* this court upheld the trial court's finding that a denial of the application was not supported by substantial evidence since all of the expert testimony was to the effect that the proposed activity would not adversely affect the wetlands.

In this case, the plaintiff submitted a report conducted by a certified soil scientist and environmental consultant that concluded that "the proposed house and septic system will have minimal impact on the present functioning of the wetland . . . ." The report by the plaintiff's expert states that the location of the house and septic system would not threaten any rare or endangered species, nor would it inhibit access for wildlife travel. A soil test conducted by this expert indicated that the installation of a septic system would be feasible. It also found that "[t]he proposed twenty-five foot wetland setback buffer would further protect the functioning of the wetlands system on this site." There was no expert evidence in the record that contradicted the expert evidence submitted by the plaintiff. "While we recognize that an administrative agency is not required to believe any of the witnesses, including expert witnesses . . . it must not disregard the only expert evidence available on the issue when the commission members lack their own expertise or knowledge." (Citation omitted.) *Tanner* v. *Conservation Commission,* supra.

On the basis of this record, we conclude that, although the commission did give its reasons for denying the plaintiff's permit, these reasons were not supported by substantial evidence. Thus, the trial court's decision that the commission's denial of the plaintiff's permit was arbitrary is correct.

The plaintiff in his cross appeal claims that the trial court was required to search the record to determine whether his application should have been granted. The plaintiff argues that the trial court should not have remanded the case to the agency if it determined on the basis of the evidence presented that the application should be granted. We reject the plaintiff's argument and affirm the trial court's order remanding this case to the agency for further proceedings.

Under Connecticut law "[w]hen agency action is overturned . . . because of invalid or insufficient findings . . . a court must ordinarily remand the matter under consideration to the agency for further consideration." *Feinson* v. *Conservation Commission,* supra, 429–30. "When it appears, however, that the [agency] could reasonably reach only one conclusion, the court may direct the [agency] to do that which the conclusion requires." *Chevron Oil Co.* v. *Zoning Board of Appeals,* 170 Conn. 146, 153, 365 A.2d 387 (1976). In *Chevron,* the trial court's order directing the zoning board of appeals to grant the variance sought by the plaintiff was proper because if the variance were not granted the application of the zoning regulation would have been "tantamount to confiscation." Id. Thus, the granting of the variance was the only reasonable action in that case.

The plaintiff argues that the commission's denial was tantamount to a confiscation. According to the plaintiff's argument, the only way to gain access to the land is by crossing the wetlands. Once the commission

refused to grant a permit with or without conditions, the plaintiff was denied access to the land and was prevented from developing it. The plaintiff points out that the minutes of the February 8, 1990 meeting indicate that one member of the commission requested a motion to approve the plaintiff's application with conditions. No one moved to approve the application with conditions. The plaintiff claims that the failure to impose conditions on his application such as requiring the use of a bridge instead of a culvert signified that the commission would not grant an application to cross the wetlands under any conditions.

The trial court reasoned that because the commission initially denied the plaintiff's application, the commission was not obligated by § 22a-41 (b)[5] to determine whether a feasible and prudent alternative to the plaintiff's proposal existed. The plaintiff argues that there is no alternative because he must cross the wetlands to gain access to the property. The plaintiff fails to point to any evidence in the record showing that his proposal for the use of a culvert and its location was the only feasible method for crossing the wetlands.

We conclude that a remand to the agency is necessary on the basis of *A.D.A.M. Land Development Corporation* v. *Conservation Commission*, 21 Conn. App. 122, 572 A.2d 364 (1990). There, the trial court found that the commission failed to consider part of a plaintiff's application seeking permission for two separate wetlands crossings. A report by the commission's engineer approved the western wetlands crossing as the only feasible alternative. Id., 126. Although, the evi-

---

[5] General Statutes § 22a-41 (b) provides: "In the case of an application which received a public hearing, a permit shall not be issued unless the commissioner finds that a feasible and prudent alternative does not exist. In making his finding the commissioner shall consider the facts and circumstances set forth in subsection (a). The finding and the reasons therefor shall be stated on the record."

dence indicated that there was no feasible alternative to the plaintiff's proposal, we still remanded the case so that the commission could determine if § 22a-41 (b) was satisfied. Id., 126–27. Here, the record contains no evidence to indicate whether there are any feasible alternatives to the plaintiff's proposal. On the basis of this record, we are unable to find that the granting of the plaintiff's permit is the only reasonable conclusion that the commission can reach. Thus, the trial court's properly remanded this case to the commission.

The judgment is affirmed.

In this opinion the other judges concurred.