[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal from the denial of an application by the Inland Wetland Commission of the Town of Vernon (hereinafter the "Commission") to work in a regulated wetlands area. The relevant facts are as follows:
On March 13, 1991, the plaintiff, Joseph Pacitti, submitted an "Application to Appear Before the Vernon Conservation Commission" in which he sought "a permit to work in, or drain into a regulated area." Return of Record #14 (hereinafter "ROR"). On March 26, 1991, a duly noticed public hearing was held before the Commission on the plaintiff's application. ROR #22 and #19.
At the hearing the plaintiff submitted to the Commission a detailed report prepared by Baystate Environmental Consultants, Inc., which analyzed the plaintiff's proposal.
ROR #21. Budd Titlow, a member of the team which compiled the report, was present at the hearing and gave a brief summary of the report and answered questions from the Commissioners. ROR #19, pp. 4-7 and pp. 24-25. In addition to this, a report was prepared by A. R. Lombardi Associates, Inc., which analyzed the plaintiff's application and made certain recommendations as to the plan. ROR #1. Both reports concluded that the plan should be allowed to proceed.
Two members of the public attended the hearing and CT Page 8470 voiced concern about the plaintiff's planned construction. ROR #19, pp. 19-22. Tim Wente, whose property abuts the land in question, expressed his concern about potential effect on the flow of water onto his property and the effect on the groundwater. ROR #19, pp. 19-21. John Grant, whose property abuts Tim Wente's property, expressed his concern with the potential destruction of some "old trees" which are on the property line of the proposed development. ROR #19, pp. 21-22.
At the close of the public hearing the Commission discussed the application and voted to deny it. ROR #19, pp. 229-32. During the discussion the focus of the Commission was on two areas. The first being the potential loss of recharge area and the second being the 47,000 cubic yards of
fill that would be applied to the wetlands. ROR #19, pp. 29-32. After voting to deny the application, the Commission sent a letter to the plaintiff which stated its reasons for the denial. ROR #2. The main text of the letter reads as follows:
 At their March 26, 1991 meeting, the Vernon Inland Wetlands Commission voted to deny the permit for Pacitti, 129 Talcottville Rd. to work in the wetlands and regulated areas.
 It was the commission's opinion, that the originally approved plan constitutes a reasonable and prudent alternative to the placement of an additional 47,000+ cubic yards of fill in the wetlands/regulated area and the negative impact of the loss of those wetlands areas along the flood plain storage areas.
ROR #2.
It is from this decision of the Commission that the plaintiff appeals. The plaintiff raises two grounds as the basis for his appeal. The first ground raised by the plaintiff is that the Commission's decision in denying the application is not supported by the record. The second ground is that the Commission acted beyond the scope of its authority when it considered a previous application for the same parcel of land as a reasonably prudent alternative to the present application. The defendant Commission argues that the record, when viewed as a whole, supports the Commission's denial of the application. The defendant argues that if the court finds that the record supports the
Commission's findings that it need not address the question CT Page 8471 of whether a reasonably prudent alternative exists.
I. Aggrievement
Aggrievement is a prerequisite to the maintaining of an appeal. See Huck v. Inland Wetlands Watercourses Agency,203 Conn. 525, 530, 525 A.2d 940 (1987). "[A]ny person aggrieved by any regulation, order, decision or action made pursuant to section 22a-36 to 22a-45, inclusive. . . may appeal to the superior court for the judicial district where the land affected is located." General Statutes Section 22a-43. An owner of the property subject to the decision of the Commission is an aggrieved party. Bossert Corporation v. Norwalk, 157 Conn. 279, 285, 253 A.2d 39 (1968). At the hearing before the court the plaintiff submitted a warranty deed for the subject property which indicated that the plaintiff was the owner of the property. (Plaintiff's Exhibit A.) As the owner of the subject property the plaintiff is aggrieved by the defendant's decision.
II. Scope of Review
"Appellate review of an agency's decision is of limited scope. The reviewing court does not make a broad, de novo review of the record. It does not redetermine factual issues or weigh the credibility of witnesses, as those matters are within the exclusive province of the agency. The court is limited to a review of the evidence and reasoning the agency has placed on the record. Agency decisions must be sustained if the record reveals substantial evidence in support of any reason given. (Citations omitted.) Kaeser v. Conservation Commission, 20 Conn. App. 309, 311, 567 A.2d 383 (1989).
III. Discussion
The plaintiff's first argument is that the Commission's denial of the application is not supported by substantial evidence. The plaintiff claims that all the evidence submitted at the hearing and the speakers present spoke in favor of the application and no evidence was submitted in opposition to the application. The defendant argues that a review of the record shows that there was substantial evidence to support the Commission's findings and therefore the plaintiff's appeal should be dismissed.
A. Substantial Evidence
As previously noted the review of an agency's actions by the superior court is limited to a review of the records. Kaeser, supra. The standard of review is elaborated in CT Page 8472 Laufer v. Conservation Commission, 24 Conn. App. 708,592 A.2d 392 (1991), where the court stated:
 [I]n reviewing decisions by a wetlands agency the evidence supporting the reason given by the agency for its action must be substantial. [T]he credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency. This so-called substantial evidence rule is similar to the sufficiency of the evidence standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury. . . The substantial evidence rule is a compromise between opposing theories of broad de novo review and restricted review or complete abstention. It is broad enough and capable of sufficient flexibility in its application to enable the reviewing court to correct whatever ascertainable abuses may arise in administrative adjudication. On the other hand, it is review of such breadth as is entirely consistent with effective administration. . . [It] imposes an important limitation on the power of the courts to overturn a decision of an administrative agency. . . and to provide a more restrictive standard of review than standards embodying review of weight of the evidence or clearly erroneous action. . . The fact that the possibility exists that two inconsistent conclusions may be drawn from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. An administrative agency is not required to believe any witness, even an expert, nor is it required to use any of the evidence presented to it in a particular manner.
(Citations omitted. Internal quotations omitted.) Laufer, supra, 715-716.
The court in Milardo v. Inland Wetlands Commission, 27
Conn. App. 221, ___ A.2d ___ (1992), discussed the application of the substantial evidence rule. In Milardo, CT Page 8473 supra, the court had the opportunity to compare the facts in its case to those in the case of Kaeser, supra, in discussing the application of the substantial evidence rule. In Milardo, supra, the court concluded that the trial court was correct in finding that there was not substantial evidence in the record to support the commission's actions. The court compared this to its decision in Kaeser, supra, where it found that there was substantial evidence to support the commissions findings.
In making the comparison between the two cases the court stated in part:
 At the four public hearings held in Kaeser, several neighboring landowners testified about their fear of flooding and concerns that the plaintiffs' proposal would increase the flooding. In this case [Milardo], none of the neighboring landowners, all of whom were notified, appeared at any of the hearings to oppose the plaintiff's application. The plaintiffs in Kaeser were also given a chance to offer additional evidence after the commission denied their application but the plaintiffs failed to take advantage of this opportunity. In Kaeser, there was no contrary expert testimony rebutting the plaintiffs' expert testimony in support of their application. Expert testimony was unnecessary in Kaeser because there was I substantial evidence on the record offered by I nonexperts to justify the commission's denial of the plaintiffs' application. The record evidence in the present case, both from experts and nonexperts, fails to establish substantial evidence in support of the commission's denial of the plaintiff's application.
Citations omitted.) Milardo, supra, 221. In Milardo, supra, the court further stated:
 [T]he plaintiff submitted a report conducted by a certified soil scientist and environmental consultant that concluded that the proposed house and septic system will have minimal impact on the present functioning of the wetland. . .' The report by the plaintiff's expert states that the location of the house and septic system would not threaten any rare or endangered species, nor would it inhibit access for wildlife travel. A soil test conducted by this expert indicated that the installation of a septic system would be feasible. CT Page 8474 It also found that [t]he proposed twenty-five foot wetland setback buffer would further protect the functioning of the wetlands system on this site. There was no expert evidence in the record that contradicted the expert evidence submitted by the plaintiff.
Milardo, supra, 222.
In the case at bar the plaintiff submitted a report compiled by a professional biologist wetland ecologist, a certified professional soil scientist and a professional botanist. As in Milardo, supra, there was no expert offered by the commission to rebut the plaintiff's experts. However, this is where the similarity ends.
At the public hearing, two members of the community appeared and expressed concern with the project as proposed. Tim Wente, whose property abuts the land in question, expressed his concern about potential effect on the flow of water onto his property and the effect on the groundwater and
John Grant, whose property abuts Tim Wente's property, I expressed his concern with the potential destruction of some "old trees" which are on the property line of the proposed development. ROR #19, pp. 19-22.
The plaintiff's own report states that there would in fact be an adverse effect on the wetlands. ROR #21. It states in part:
 The proposed construction of a retail building and associated parking facilities will result in the disturbance of 21,750+ SF (0.50+ acres) of regulated wetlands, involving the placement of 1,400 CY of fill. Specifically, this direct impact will involve the permanent loss of 14,500+ SF (0.33+ acres) of speckled alder thicket and 7,250+ SF (0.17+ acres) of successional wet swale. I Construction of the building and parking lot will additionally impact 117,600+ SF (2.70+ acres) of the regulated 75-foot buffer zone to these wetland systems. The affected buffer zone area is characterized as an upland field, in early to mid vegetative succession. The total amount of fill to be placed in the regulated (upland) buffer zone is 42,600+ CY.
 The proposed detention/sedimentation basin, which is also being designed as a functional CT Page 8475 wetland (see Appendix A-2 for details), will not result in the direct loss of any wetlands. However, this wetland treatment basin will require the excavation of 31,700+ CY of material from within the 75-foot regulated buffer zone. As shown on the site plans, all of the proposed excavation for the sedimentation basin will occur immediately east of the wetland swale, in an area presently occupied by fill slopes associated with the previously approved construction (i.e., the Connecticut National Bank building).
 The construction of a 5-foot wide, 400-foot long gravel walking path along the Hockanum River will involve the placement of 60+ CY of gravel fill within the 1300+ SF (0.03+ acres) of regulated wetlands. Path construction will require the placement of an additional 21+ CY of gravel fill within 440+ SF (0,01+ acres) of the regulated 75-foot buffer zone. For the most part, path construction will impact the forested floodplain wetlands of the Hockanum River system.
ROR #21, pp. 9-10. To offset the adverse affect on the wetlands the report does contain mitigating factors. ROR #21, pp. 11-15. These mitigating factors, however, do not negate the impact on the wetlands.
The conclusion that the plaintiff's expert reached based on this report is "the proposed development should not have any significant long-term adverse effects on wetland resources." ROR #21, p. 15. This assessment, coupled with the anticipated economic benefits of the proposed development, indicates that this proposed action complies with the `balancing' between economic objectives and resource protection called for in P.A. 155 and Section 4.5 of the Regulations. As such, the proposed action represents a suitable land use alternative for the study parcel." ROR #21, p. 15.
Although there was no expert testimony or report submitted in opposition to the proposed site, based on the plaintiff's own expert testimony and report inconsistent conclusions could be formulated. The plaintiff's expert reached one conclusion based on the report while the Commission reached a different conclusion. The Commission, after hearing the expert testimony and reviewing the report, concluded that there would be an adverse impact on the wetlands and accordingly voted to deny the application. "The fact that the possibility exists that two inconsistent CT Page 8476 conclusions may be drawn from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." (Citations omitted.) Laufer, supra, 716. More particularly, the plaintiff argues that the Commission was bound by the four corners of the application and was acting beyond its scope when it considered a previous application as a reasonable alternative.
The court in Madrid Corporation v. Inland Wetland Agency, 25 Conn. App. 446, 594 A.2d 1037 (1991), when faced with the same situation as the case at bar held that the issue of reasonably prudent alternatives need not be addressed since the court found that there was substantial evidence to support the denial of the application. Madrid Corporation, supra, 450. Therefore, since this court has found substantial evidence to support the denial of the application in the record it will not address the plaintiff's second argument.
CONCLUSION
For the foregoing reasons, the appeal is dismissed.
BY THE COURT,
Hon. Lawrence C. Klaczak Superior Court Judge