[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM, OF DECISION
The plaintiffs, Glenn Hutchins and Gregory Hutchins, appeal a decision of the East Lyme Conservation Commission (hereinafter "Commission") denying an application for a permit to construct a single-family residence on the property known as 6 Brook Road.
This Court finds that the plaintiffs are the owners of the affected property and are aggrieved. The Court finds in favor of the plaintiffs.
The plaintiffs submitted an application for a permit to build a single-family residence on or about January 31, 1996. The property at issue is a long and narrow lot, zoned for residential use. It is bordered on three sides by inland wetlands and a water course, the Pattagansett River. This was the second application for a permit to build. The first application was denied on or about September 4, 1995.
The plaintiffs claim that the second application contained "significant changes" from, the first. The changes were made in an attempt to alleviate the concerns expressed earlier by the Commission. The chances were outlined in a letter dated January 29, 1996 to the Commission from Donald Gerwick of D.W. Genvick Engineering. (Return of Record [ROR], Item 10.)
A public hearing on the subject application was conducted over three days; April 8, 1996, May 6, 1996 and June 7, 1996. At the conclusion of the hearing on June 7, 1996, two members voted to approve the application and two voted to deny it. (ROR, Item 46.) The tie vote had the effect of a denial of the permit application.
The standard of review in an administrative appeal is to determine whether there is substantial evidence in the record that reasonably supports the administrative decision. Strong v.Conservation Commission, 28 Conn. App. 435, 440, 611 A.2d 427
(1992), cert. granted 224 Conn. 902, 615 A.2d 1046, appeal dismissed 226 Conn. 227, 230, 627 A.2d 431 (1993). An agency decision must be based on reliable evidence made public and the CT Page 8839 applicant must have an opportunity to respond to agency concerns.Huck v. Inland Wetlands Watercourses Agency, 203 Conn. 525,552, 521 A.2d 940 (1987).
"The reviewing court . . . must search the record of the hearings before the Commission to determine if there is an adequate basis for its decision." (Internal quotation marks omitted.) Samperi v. Inland Wetlands Commission, 226 Conn. 579,588-89, 628 A.2d 1286 (1990), citing Gagnon v. Inland Wetlands Watercourses Commission, 213 Conn. 604, 611, 674 A.2d 439 (1990). See also Keiser v. Conservation Commission, 41 Conn. App. 39, 42,674 A.2d 430 (1996). Should substantial evidence exist in the record to support any basis or stated reason for the agency's decision, the court must sustain the decision. DeBeradinis v.Zoning Commission, 228 Conn. 187, 198-99, 635 A.2d 1220 (1994).
"The United States Supreme Court, in defining `substantial evidence' in the `directed verdict' formulation, has said that it is `something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency is finding from being supported by substantial evidence.'"Huck v. InlandWetlands Watercourses Agency, supra, 203 Conn. 541. The evidence however, to support any such reason must be substantial.
The plaintiffs contend that the denial of the permit was not supported by the evidence and that there is no reasonable alternative use for the property. The plaintiffs have requested that the Commission be directed to approve the application for the permit or a finding that the denial of the permit constituted a "taking" and order compensation.
In the present case, this court finds that there is not substantial evidence on the record to support the Commission's denial of the application. Since this finding is dispositive, this court does not need to reach the plaintiffs' constitutional issue.
The Commission was charged with reviewing the application and assessing whether the plan would have an adverse impact or substantial effect on the area. Two of the commissioners were willing to approve the application with strict conditions, restrictions and a conservation easement. The two commissioners who voted to deny the application made several conclusionary statements and expressed many opinions during the three dates for CT Page 8840 the hearing. Two of the commissioners on June 7, 1996 stated the reasons for the denial of the application.[1] (ROR, Item 46). One of the commissioners who voted to deny the application appears to own a home near the plaintiffs' property. (ROR, Item 48, p. 52.)The record does not contain substantial evidence to support the denial.
In Milardo v. Inland Wetlands Commission, 27 Conn. App. 214,218, 605 A.2d 869 (1992), the court agreed with the trial court that the transcripts of the public hearing were inadequate. The transcripts failed to identify the speakers and were replete with omissions. In the present case, the transcripts of April 8, 1996, and May 6, 1996, are likewise replete with omissions and speakers on several occasions were not identified. There are minutes but no transcript for the meeting of June 6, 1996. There were many unanswered and incomplete questions and there were also many incomplete answers.
Our Supreme Court has stated that "a lay commission acts without substantial evidence, and arbitrarily, when it relies on its own knowledge and experience concerning technically complex issues . . . in disregard of contrary expert testimony". Feinsonv. Conservation Commission, 180 Conn. 421, 429, 429 A.2d 910
(1980). The determination of what constitutes an adverse impact on wetlands is considered to be a technically complex issue.Tanner v. Conservation Commission, 15 Conn. App. 336, 341,544 A.2d 258 (1988).
In Tanner v. Conservation Commission, the Appellate Court said, "[w]hile we recognize that an administrative agency is not required to believe any of the witnesses, including expert witnesses . . . it must not disregard the only expert evidence available on the issue when the commission members lack their own expertise or knowledge." (Citations omitted.) Tanner v.Conservation, supra, 15 Conn. App. 341.
In the present case one of the commissioners stated, in part, that some of the evidence was "too complex to go into at the moment" and that the experts should meet and "hash it out." (ROR, Item 48, p. 103.) The plaintiffs submitted a wetland resource evaluation and impact assessment in support of their application which concluded that construction of a residence on the property would not involve direct impact or loss of wetland acreage and the existing upland forest vegetation would not be affected. (ROR, Item 8, p. 13.) There was expert testimony on April 8, 1996 CT Page 8841 that the wetlands would not be affected. (ROR, Item 48, p. 36, 38, 59.) On April 8, 1996 and May 6, 1996, the expert testified that there would be no direct impact from the plaintiffs' proposal. (ROR, Item 49, p. 35.) No contrary expert opinion was presented. The minutes of June 7, 1996 indicate that Ms. Kreklan, the Conservation officer for the town, believed the plan submitted was reasonable. Additionally, the application did not propose any incursion into the wetlands identified on the property.
Unfortunately, at least two of the commissioners were working under the false assumption that regulated activities could not be located in the regulatory buffer. (ROR, Item 46, p. 1, 2, and 4; ROR, Item 48, p. 41, 93, 111, and 112.) The record reveals that the Commission repeatedly referenced the first application. There was very little discussion about the second application. As pointed out in the brief of the Commission of Environmental Protection, the Commission as a whole was acting as if bound by its "prior consideration" of the parcel of land. The predecessors in title had applied for a sewer assessment exemption from the town's department of public works. (ROR Item 27; ROR, Item 48, p. 101; ROR, Item 49, p. 20, et seq.) This Commission supported the eventual application to the East Lyme Water and Sewer Commission for the above mentioned exemption conditioned on a conservation easement to the town. The town never received such easement. Furthermore, there is no record of the Commission ever reviewing an application from previous owner's filing to construct a residence on the property. This Commission has never acted to apply the Inland Wetlands and Watercourses Act to any application of the plaintiffs' predecessor in title.
The Commission also seemed to believe that approval of this permit would mandate approval of all subsequent requests. (ROR, Item 48, p. 80.) The Commission's minutes also seem to contain a lament that approval would result in loss of total control over the property and that "if there were a perfect family in the house they could live on the site and respect the wetlands area (ROR, Item 46, p. 2.)
On the basis of this record, the Commission does not appear to have been entirely focused on the issues before it. The conclusionary statements and opinions expressed are not supported by substantial evidence. The appeal is sustained. The matter is remanded to the Commission for further consideration.
Crawford, J. CT Page 8842