[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an appeal from the decision of the Conservation Commission of the Town of East Lyme (hereinafter the Commission) approving the application of defendant Guy R. Turgeon to conduct regulated activity in inland wetlands or buffer areas within the Town of East Lyme. For reasons hereinafter stated, the decision of the Commission is reversed and the appeal is sustained.
The Commission is the agency empowered to regulate activities affecting the inland wetlands and watercourses within the territorial limits of the Town of East Lyme under the General Statutes of Connecticut §§ 22a-36 to 22a-45 and the town regulations. General Statutes § 22a-43 provides in pertinent part that any person aggrieved by any decision or action made pursuant to General Statutes § 22a-36 to § 22a-45 or "any person owning or occupying land which abuts any portion of land or is within a radius of ninety feet of the wetland or watercourse involved in any regulation, order, decision or action," may appeal such decision or action to the Superior Court within the time allowed. It is found that plaintiff is the owner of land abutting the subject property and is therefore statutorily aggrieved and has standing to prosecute this appeal.
The record indicates that on January 6, 1999,[1] Mr. Turgeon applied to the Commission for a permit. The proposed activity described in the application was "construction of home on existing lot within the buffer including filling of wetlands." A form filed with the application indicates that the activity would involve filling, excavation, roadway/driveway construction and activity in buffer. CT Page 4571
The application first came before the Commission at its regular meeting held January 11, 1999. The application was discussed by the Commission which noted that the plan was identical to one that had previously been submitted and withdrawn. It was remarked that a site walk had been conducted on January 9, 1999. It was also remarked that the whole lot was wetlands and had to be built up. It was voted to schedule the application for a public hearing to be held February 1, 1999. On a later date, the public hearing was rescheduled for March 1, 1999. A public hearing was held on that date and at the conclusion of the public hearing, after discussion, the application was approved unanimously by the Commission with certain conditions.
This appeal was timely filed by the plaintiff. On May 24, 1999, the applicant, Guy R. Turgeon, intervened as a party defendant. The Commissioner of Environmental Protection also appeared pursuant to General Statutes § 21a-43 (a).
"On an appeal from a decision of an inland wetlands commission to the Superior Court, the plaintiff must establish that substantial evidence does not exist in the record as a whole to support the agency's decision. Samperi v. Inland Wetlands Agency,226 Conn. 579, 587, 628 A.2d 1286 (1993). The trial court must search the record of the agency hearings to determine whether there was an adequate basis for the inland wetlands commission's decision. Milardo v. Inland Wetlands Commission,27 Conn. App. 214, 217-18, 605 A.2d 869 (1992). The agency's decision must be sustained if an examination of the record discloses evidence that supports any one of the reasons given. . . . The evidence, however, to support any such reason must be substantial; [t]he credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency. . . . [E]vidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact at issue can be reasonably inferred. . . . The reviewing court must take into account [that there is] contradictory evidence in the record . . . but the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. . . . [A]n administrative agency is not required to believe any witness, even an expert, nor is it required to use in any particular fashion any of the materials presented to it so long as the conduct of the hearing is fundamentally fair. (Citations omitted; internal quotation marks omitted.) Huck v. Inland Wetlands Watercourses Agency,
CT Page 4572203 Conn. 525, 539-42, 525 A.2d 940 (1987)." Forsell v. ConservationCommission, 43 Conn. App. 239,243-244 (1996).
Plaintiff claims that the Commission acted illegally, arbitrarily and in abuse of its discretion in granting the permit and raises three separate issues in connection with this claim.
 I.
Petitioner claims that it was error for the Commission to approve the permit where the application was clearly incomplete under the inland wetlands and watercourses regulations of the Town of East Lyme. Section 4 of the regulations states that no regulated activity shall be conducted upon any inland wetland or buffer area within the town without a permit issued by the Commission (§ 4.1). Regulated activities include the removal of material from wetland area, the deposit of material in the area, construction, alterations or otherwise negatively impacting inland wetlands or watercourses (§ 4.2). Section 5 of the regulations sets forth the application procedure. Subsection 5.1A provides that any person proposing to conduct a regulated activity upon an inland wetland or buffer area should submit an application to the Commission. Subsection B of that section states that "[n]o application shall be deemed complete unless it is in such form, contains such information deemed necessary by the Commission for a fair determination of the issues, . . ." . Section 5.2 of the regulations sets forth in great detail the minimum information which must be included with the application for it to be considered complete. Prior to granting or denying a permit, the Commission or its agent is required to make a formal determination of the completeness of the application in compliance with § 5.3 of the regulations. This section also provides that incomplete applications must be withdrawn by the applicant or denied by the Commission for not meeting the minimum submission's requirements.
The record indicates that at its meeting on March 1, 1999, upon motion properly made and seconded, the Commission unanimously voted to accept as complete the application filed by Mr. Turgeon. Plaintiff argues that the application was not completed and that it was error for the Commission to determine that all of the information required by regulation had been included with the application. It is argued that ten of the mandatory items required by § 5.2 (B, C, E.3, E.6, E.9, E. 11, F, H.2, H.3, H.6) were not included with the application. A review of the record and the transcript of the public hearing confirms that the CT Page 4573 application was not technically in accordance with the regulations and did not contain all of the information required. However, much of the information was submitted or covered at the public hearing so that to invalidate the decision on the grounds of a defective application would be to exalt form over substance.
When reviewing the actions of a local commission to determine if its findings comply with the standards set out in the regulations, the court should not indulge in a microscopic search or technical infirmities. McCrann v. Town Plan ZoningCommission, 161 Conn. 65, 71 (1971). In determining claims of error in matters involving local commissions, courts must be scrupulous not to hamper the legitimate activities of civic administrative boards by seeking out technical infirmities in their action. Connecticut Resources Recovery Auth. v. Planning Zoning Commission, 225 Conn. 731, 751 (1993). While it may have been preferable for the Commission to require strict compliance with § 5.2 of the regulations, under the circumstances of this case, it cannot be found that it was an abuse of discretion to consider the application as being in compliance with the regulations.
 II.
Plaintiff claims that the Commission acted illegally in that in rendering its decision it failed to consider any of the facts and circumstances set forth in Connecticut General Statutes § 22a-41
and § 6 of the local regulations.
General Statutes § 22a-42a(d)(1) requires that the local commission before granting or denying any permit for a regulated activity within the inland wetlands to consider the factors set forth in § 22a-41. This section also requires the Commission to state upon the record the reasons for its decision. The factors set forth in § 22a-41 are as follows:
 (1) The environmental impact of the proposed regulated activity on wetlands or watercourses;
 (2) The applicant's purpose for, and any feasible and prudent alternatives to, proposed regulated activity which alternatives would cause less or no environmental impact to wetlands or watercourses;
 (3) The relationship between the short-term and long-term CT Page 4574 impacts of the proposed regulated activity on wetlands or watercourses and the maintenance and enhancement of long-term productivity of such wetlands or watercourses;
 (4) Irreversible and irretrievable loss of wetland or watercourse resources which would be caused by the proposed regulated activity, including the extent to which such activity would foreclose a future ability to protect, enhance or restore such resources, and any mitigation measures which may be considered as a condition of issuing a permit for such activity including, but not limited to, measures to (A) prevent or minimize pollution or other environmental damage, (B) maintain or enhance existing environmental quality, or (C) in the following order of priority: restore, enhance and create productive wetland or watercourse resources;
 (5) The character and degree of injury to, or interference with, safety, health or the reasonable use of property which is caused or threatened by the proposed regulated activity; and
 (6) Impacts of the proposed regulated activity on wetlands or watercourses outside the area for which the activity is proposed and future activities associated with, or reasonably related to, the proposed regulated activity which are made inevitable by the proposed regulated activity and which may have an impact on wetlands or watercourses.
Section 6 of the regulations requires that the Commission in carrying out the purposes and policies of the regulations, including matters relating to licensing, take into consideration all relevant facts and circumstances including, but not limited to, the factors contained in the section. The factors which the Commission is required to consider by § 6 are set forth in four pages. These factors are set forth in great detail and include such matters as the environmental impact on the wetlands and consistency with Department of Environmental Protection goals.
In addition to the factors which the Commission must consider, § 22a-41(b)(1) requires that where a public hearing is held, as here, a permit shall not be issued unless it is found on the basis of the record that a feasible and prudent alternative does not exist. Section 6.9 of the regulations also requires that the Commission consider the availability of preferable alternative locations on the subject parcel. CT Page 4575
The record indicates that the property for which the permit was sought was 50 feet by 100 feet in area. Mr. Turgeon proposed to construct a 20 by 52 foot house with a six-foot deck on the lot. The lot was approximately 5,000 square feet in area and it was proposed to fill 3,500 square feet of wetlands. At the public hearing, Mr. Turgeon's agent indicated that everything on the lot was wet. Testimony at the hearing indicated that the lot was 90 percent wetland with a spring on the property.
At the conclusion of the public hearing, the Commission unanimously voted to approve the application with the following conditions:
Footing drains will be installed around the house.
 Lawn drain will be put on the east side of the property near the property line.
 Drainage to East Shore Drive will be installed before construction of the house.
 A performance bond in the amount of $8,000 will be provided to the Conservation Commission.
 A Professional Engineer will design and sign the drainage plans.
 Silt fence and hay bales will be installed on the easterly property line.
The Commission did not specifically set forth the reasons for its decision. The Commission did discuss the granting of the application and the following language is indicative of the factors which the Commission considered in granting the application.
 Mr. Hafner stated that the Commission should address the fact that a permit is being issued even though the lot is 90 percent wetlands. Mr. Hafner stated that he does not like to do it, but the Commission has lost court cases in trying to deny permits for these lots since municipal sewers were installed. The court action cost the town a lot of money so the Commission is acting this way under protest since in a practical sense of that the Commission must do. CT Page 4576
 Mr. Larson stated that he agreed, the Commission is doing the best they can under the circumstances.
 Mr. Nichols stated that, the difference between this lot and others is that this lot was established before the existence of wetlands regulations.
Where, as here, the Commission has failed to state on the record its reasons for its decision the court must search the record to determine if there was an adequate basis for the decision. The Commission's decision must be supported if an examination of the record discloses substantial evidence which supports the decision. Forsell v. Conservation Commission, supra,43 Conn. App. 243-44.
In evaluating the application, the Commission was required to apply the factors set forth in General Statutes § 22a-41 and § 6 of its own regulations. These factors involve the impact of the proposed activity on the wetlands.
An examination of the record discloses no evidence of the impact of the proposed activity on the wetlands or the factors which, by law, the Commission was mandated to consider. The only mention of these environmental issues was made by speakers at the public hearing who questioned the environmental impact which the proposal or the proposed activity would have.
The report and testimony of the applicant's expert witnesses on the subject went into great detail in establishing the existence of the wetlands and describing what was found. There was no evidence, expert or otherwise, concerning the effect of the proposed activity on the wetlands.
Both General Statutes § 22a-41 and § 6 of the regulations require the Commission to consider feasible and prudent alternatives to the proposed activity which might cause less or no environmental impact to the wetlands. There was no evidence in the record of any proposed alternative or that the Commission considered any such alternative to the construction requested in the application. It has been argued that no prudent alternative was possible since a variance to reduce the sideline requirement had been denied. This, however, would not preclude a reasonable alternative to the proposed construction which might have a lesser impact on the wetlands. One obvious alternative would be a reduction in size of the proposed house. The record, however, is CT Page 4577 devoid of any proposed alternative or that any such alternative was presented by the applicant or considered by the Commission.
Almost all of the evidence at the public hearing was devoted to the question of surface runoff waters. There was considerable concern that the proposed activity, particularly filling of the wetlands, would cause surface water to run onto adjoining property. There was also concern as to how this would be handled within the town drainage system. The evidence at the public hearing was devoted almost exclusively to these problems and how the applicant intended to resolve them.
The discussion of the Commission and the conditions attached to the permit reflect this almost exclusive concentration on the drainage problem. The Commission appears to have granted the permit under the mistaken idea that they were required to grant the permit because sewer laterals had been installed.
This concentration by all parties on surface drainage problems left the record practically devoid of evidence concerning the matters which the Commission was required to consider under General Statutes § 22a-41 and § 6 of the regulations. The court is not allowed to substitute its discretion for that of the Commission. For the Commission's decision to be upheld, however, there must be substantial evidence in the record to support the decision. The substantial evidence must be germane to the factors which the Commission was required to consider by law. Here, there was no evidence submitted or consideration given to the factors which, by law, the Commission was required to consider. It must be concluded that substantial evidence does not exist in the record as a whole to support the Commission's decision. Samperiv. Inland Wetlands Agency, supra, 226 Conn. 579.
The third issue raised by plaintiff has been adequately addressed above and will not be further considered.
 II.
For reasons above stated, the appeal is sustained and judgment entered in favor of the plaintiff against the defendant.
 Joseph J. Purtill Judge Trial Referee