[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an appeal from the action of the defendant Conservation Commission of the Town of Waterford (hereinafter the "Commission") in denying plaintiffs application to conduct certain regulated activities within a designated wetlands area of the Town of Waterford.
For reasons hereinafter stated, the appeal is dismissed.
The appeal of the Commission's decision has been taken under the provisions of C.G.S. § 22a-43 which limits such appeals to persons aggrieved by the decision. From the evidence it is found that plaintiff acquired title to the property which is the subject of this appeal by warranty deed on August 24, 2001 and continued to hold such title to the date of trial. It is therefore concluded that petitioner is aggrieved and has standing to prosecute this appeal. Huck v. Inland Wetlands Agency,203 Conn. 525, 530 (1987).
Pursuant to the provisions of C.G.S. § 22a-42, the Commission has been authorized by ordinance of the Town of Waterford to carry out the provisions of the Inland Wetlands and Watercourses Act in the Town of Waterford.
On September 13, 2001, plaintiff applied to the Commission for authority to conduct regulated activities within the wetland area at 11 Oak Road, Waterford. The activity contemplated by the application was the filling of wetlands for a residential home. The activity proposed was the excavation of wetland soil and the replacement with fill. The property consisted of .26 acres. The acreage of wetland was stated on the application to be .26 acres. The acreage to be altered was .11 acres.
The property is subject to zoning regulations of the Town of Waterford and lies within the R-1 Zone.
Plaintiff's application was considered by the Commission as its CT Page 14133 meetings held on September 27, October 11 and 25 as well as its meeting of November 8, 2001. Plaintiff was represented at all of these meetings. At the November 8, 2001 meeting, the Commission, by unanimous vote, denied the application stating the reasons for its action on the record. Within the time allowed by statute, the present appeal was filed. All notices required by law appear to have been properly published and no procedural difficulties have been noted.
The Commissioner of Environmental Protection (hereinafter the "Commissioner") has appeared as a defendant in this action pursuant to the authority contained in C.G.S. § 22a-43 (a).
In an appeal such as this, the reviewing court must uphold the Commission's action unless such action is found to be arbitrary, illegal or not reasonably supported by the evidence. Red Hill Coalition, Inc. v.Conservation Commission, 212 Conn. 710, 718 (1989). The plaintiff has the burden of challenging the administrative action to establish that the record does not support the action of the commission. Samperi v. InlandWetlands Agency, 226 Conn. 579, 587 (1993). The Commission's decision must be sustained if an examination of the record disclose evidence that supports any one of the reasons given for the action. Id. The evidence to support any such reason must be substantial. Huck v. Inland Wetlands andWatercourses Agency, supra, 203 Conn. 540.
The evidence presented by plaintiff at the various hearings may be summarized as follows:
In applying for the permit, plaintiffs intention was to construct a three-bedroom residential structure on the lot at 11 Oak Road. This is an allowable use under the zoning regulations. The lot is .26 acres (11, 500 square feet) an area that is entirely wetlands. The application seeks to excavate and fill 4, 750 square feet. Approximately one-half of the wetland area of the lot will be excavated and filled. This will have the effect of reducing the available wetland habitat and cover certain animal species which now inhabit the wetlands. Adjacent wetlands were previously filled for the construction of Oak Street. The wetlands were previously filled on other lots in the vicinity and plaintiffs lot is basically surrounded by lawns and roads.
The lot is part of an approved subdivision and other houses have been built on the same type soils. The lot was not previously developed because the owner lived on an adjacent lot and maintained this lot as a lawn. The town sanitarian had approved the lot for connection to the municipal sewer system. CT Page 14134
At the September 27 hearing, the Commission expressed concern about the proposed project since the lot was entirely wetlands. The commission chairman, Mr. Johnson, raised concerns with the amount of fill to be placed on the wetlands and requested a § 7 evaluation of the potential impact to the wetlands by the proposed activity being submitted for review. Plaintiffs representatives subsequently state that the § 7 evaluation of the wetlands was not available for submission.
The application was again considered by the Commission at its meeting of October 11, 2001 when a wetland assessment report of Richard Snarski of New England Environmental Services was discussed. At that meeting, the Commission inquired if plaintiff had considered a smaller footprint for the proposal to reduce the impact on the wetlands. Concern was voiced by the Commission with respect to the proposed filling of the wetlands for a residence on a lot which was entirely wetlands. Plaintiff was directed to investigate potential mitigation of the proposed impact on the wetlands.
At the November 8, 2001 meeting, plaintiff was represented by Mr. Giannattasio, an engineer, who reviewed the project and the status of the wetlands in the area. He stated an alternative to the proposed structure had been considered. A member of the Commission stated that the applicant had been asked to review potential mitigation of the impact on the wetlands. The engineer again stated that plaintiff had considered this.
The Commission then reviewed prior permits issued in the area and it was noted that in the past when permits issued there had been some upland area available on the lot to support the house.
A member of the Commission stated that plaintiff needed to consider the concerns of the Commission and explore mitigation of the impact of this project on the wetlands.
It was noted by the Commission that the time allowed for reviewing the application was about to expire. Plaintiffs representative was asked if plaintiff would be willing to grant an extension of time so that the application could be further reviewed. The engineer stated that plaintiff had not granted authority to him to grant such an extension. A motion was then made to deny the application. In the discussion on this motion, it was noted that alternatives presented by the plaintiff were not satisfactory as no alternative had been suggested that would mitigate the proposed loss of the wetlands.
The Commission then voted to deny the application. In denying the application, the Commission stated its reasons as: CT Page 14135
1. The property is 95% wetland area and contains little developable wetlands;
2. It is not the practice of the Commission to allow filling of property that is 95-100% wetlands for construction of a house, regardless of the finding, that the wetland resource is of low value and the Commission does not wish to set a president with this application;
3. The proposed mitigation is not significant enough to justify the proposed filling of the wetlands.
In appealing the decision of the Commission, plaintiff claims that the action of the Commission was capricious, unreasonable and inconsistent with the intent of the Inland Wetlands and Watercourse Regulations and was made without due regard to the facts. Plaintiff also contends that the action of the Commission was an unlawful taking of plaintiffs property in violation of theFifth Amendment to the United States Constitution and Article I of the Connecticut Constitution.
As previously noted, the decision of the Commission must be sustained if an examination of the record disclosed evidence that supports any one of the reasons given for the action. Samperi v. Inland Wetlands Agency, supra, 226 Conn. 587.
 I
In denying the permit, plaintiff claims that the Commission acted unfairly and for invalid reasons. It is claimed that the Commission ignored its own regulations and denied the application for reasons which are not based upon the law or applicable regulations enacted by the Commission. Tanner v. Conservation Commission, 15 Conn. App. 336, 341
(1988). Plaintiff argues that the Commission was not free to disregard the only expert testimony presented on the application. This, it is claimed was the expert testimony submitted on plaintiffs behalf, supporting the granting of the permit. Plaintiff also cites Milardo v.Inland Wetlands Commission, 27 Conn. App. 214 (1992) in support of this argument.
It does not appear that Tanner is germane to the case at bar. InTanner, the applicants sought to construct a residence on a 1.115 acre site. The construction was to be on land adjoining the wetlands and the only expert testified that the proposed construction would have no significant impact on the wetlands or watercourse systems. The Appellate Court upheld the trial court's decision that the Commission was not free to ignore this expert testimony and rely upon its own insight. Id., 341. CT Page 14136 The factual situation in Tanner, however, is quite different from that existing in this case where all of the proposed activities will take place in the wetlands. The expert testimony was not that the wetlands here would be unaffected by the project but that the wetlands were of low quality. There was also expert evidence that the project would reduce the habitat for certain animal life in the wetlands.
In Malardo, the trial court and the Appellate Court reached a conclusion in accord with Tanner. The facts in Malardo were quite dissimilar to the situation in this case. In Malardo, the application merely sought to construct a driveway across the wetlands with a house and septic system on adjoining land. All expert testimony indicated that the project would have no adverse affect on the wetlands. This is not the situation in the present case where the house will be constructed in the wetlands.
C.G.S. § 21a-41 sets forth the basic considerations which the Commission must consider. In accordance with the mandate of C.G.S. §21a-42 (f), the statutory requirements have been incorporated into § 10.2a-f of the Waterford Regulations. Section 10.2 states that the Commission shall consider the standards and criteria in making its decision on any application for a permit.
In considering the plaintiff's application to conduct regulated activities in the wetlands, the Commission was required to consider § 10.2a. This section requires the Commission to consider the environmental impact of the proposed action including "the effects on the inland wetlands and watercourses capacity to support fish and wildlife, to prevent flooding, . . ." There was evidence before the Commission that the proposed activities would have a deleterious effect on wildlife which existed in the wetlands which covered almost the entire lot. A neighbor expressed concern that the proposed activities could result in flooding. Section 1 0.2b requires the Commission to consider alternatives to the proposed action.
Section 10.2f requires the Commission to consider "measures which would mitigate the impact of any aspect of the proposed activity (IES)." Even though the Commission requested it, plaintiff has elected not to submit any substantial measures which would reduce the impact of the proposed activity on the wetlands. The principal thrust of plaintiffs evidence before the Commission was that the wetlands on the lot were of low quality and regulated activities have been allowed on other properties in the area.
The first reason stated by the Commission for its denial of plaintiffs CT Page 14137 application is a statement of fact which does not appear to be in dispute. The second reason stated by the Commission refers to a policy of the Commission with respect to lots that are almost all wetlands. This appears to be an attempt by the Commission to point out the difference between plaintiffs lot and other lots for which permits have been issued. The third reason set forth by the Commission for its action that "the proposed mitigation is not significant enough to justify the proposed filling of the wetland" is of principal significance. By statute, and by its own regulations, the Commission was bound to consider alternatives which would mitigate the effect of the proposed activity on the existing wetlands. Plaintiff was given the opportunity to submit mitigating alternative plans but had elected not to do so. Section 10.3 of the Regulations, which follows C.G.S. § 41(b) 1, requires that where an application has received a public hearing, a permit shall not be issued by the Commission if a feasible and prudent alternative exists. This requirement is binding on the Commission. Samperi v. Inland WetlandsAgency, supra, 226 Conn. 590 ( ).
Here, the Commission could not make such a finding because plaintiff has failed to provide it with any reasonable alternative to the proposal contained in the application. It must then be concluded that the third reason cited by the Commission for its action is a valid reason for denying the permit sought and it is supported by substantial evidence in the record.
 II
Plaintiff claims that the denial of her appeal constituted a taking of her property in violation of her rights under the federal and state constitutions. Regulating the use of private property in or affecting the wetlands and watercourses in order to protect the public interest is a legitimate exercise of the police power and does not, per se, constitute a taking. Gill v. Inland and Watercourses Agency, 219 Conn. 404 (1991);Aunt Hack Ridge Estates, Inc. v. Planning Commission, 160 Conn. 109, 117
(1970). "To demonstrate the requisite finality, a property owner asserting a regulatory takings claim bears the burden of proving that the relevant government entity will not allow any reasonable alternative use to the property. Huck v. Inland Wetlands and Watercourses Agency, supra,203 Conn. 552-554.
A review of the record in this case indicates that the Commission was seeking a revised application from plaintiff which would reduce the impact on the wetlands. There is nothing to indicate that the Commission would not be willing to accept such a proposal. The language of the second reason cited for denial of the application could be interpreted to CT Page 14138 show that the Commission has a practice of not allowing regulated activity on land such as plaintiffs which was almost all wetland. Such an interpretation, however, is at variance with the record which demonstrates that the Commission was seeking a mitigated application. Just prior to the vote denying the application, the Commission sought an extension of time within which it was required to act so that a revised plan could be presented.
Before plaintiff can successfully claim an unconstitutional taking of her land, it must be proven that she has been finally deprived of the reasonable and proper use of her property. § 54.5 Fuller, Land Use and Practice, p. 601 (1999).
In this case, plaintiff has not demonstrated that she has been deprived of the reasonable use of her property. Plaintiff is at liberty to file a revised application which may well be accepted by the Commission.
Since the action of the Commission cannot be found to be final, the claim of unconstitutional taking must be denied. Accordingly, the appeal is dismissed and the decision of the Commission is upheld.
___________________ Joseph J. Purtill, JTR CT Page 14139